421 F.2d 454
 SOUTH HILL NEIGHBORHOOD ASSOCIATION, Inc., a nonprofit
incorporated association of the Commonwealth of Kentucky;
the Bluegrass Trust for Historic Preservation, Inc., a
nonprofit incorporated association of the Commonwealth of
Kentucky; Curtis Harrison; Mrs. Stathis Kafoglis; Mr. & Mrs.
W. T. Dennis; on behalf of themselves and all other United
States or Kentucky citizens, taxpayers, property owners, or
historic preservation groups and persons similarly situated,
Appellants,
v.
George ROMNEY, Secretary of the United States Department of
Housing and UrbanDevelopment, et al., Appellees.
 No. 19995.
 United States Court of Appeals Sixth Circuit.
 Nov. 24, 1969, Certiorari Denied April 6, 1970, See 90 S.Ct.
1261.
 
 Eugene F. Mooney, Jr., Lexington, Ky., for appellants on motion for injunction.
 J. Montjoy Trimble, C. Thomas Greene, Kincaid, Wilson, Schaeffer, Trimble & Hembree, Lexington, Ky., for appellees.
 Urban Renewal and Community Development Agency of the City of Lexington, A Municipal Corporation, Robert E. Featherston, William R. Embry, Byron Romanowitz, D. C. Noble, H. J. Hagler, Jennie Bryant, The City of Lexington, A. Municipal Corporation, Charles Wylie, Mayor, The Board of City Commissioners, on motion for order denying injunctive relief.
 A. Gene Oliver, Strother, Oliver & Strother, A. B. Rouse, Jr., Fowler, Rouse, Measle & Bell, Richard Smith, Acting City Manager and Corp. Counsel, George Cline, U.S. Atty., Lexington, Ky., for appellees.
 Before PHILLIPS, Chief Judge, and PECK and COMBS, Circuit Judges.
 PER CURIAM.
 
 
 1
 The subject matter of this action, which has come on for consideration by this panel at the direction of the Chief Judge, has been the core of a controversy which has seen the parties at odds in both administrative and judicial proceedings. The latter have included an action in the courts of the Commonwealth of Kentucky with review by its Court of Appeals, sitting en banc, with negative results to the plaintiffs, and an action with a similar conclusion in the District Court, from which the present appeal was perfected.
 
 
 2
 The ultimate aim of the plaintiffs is the protection from demolition of fourteen buildings, claimed to be of historic significance, which stand in an area designated for improvement under the Urban Renewal Plan of the City of Lexington, Kentucky, all as appearing in detail in the documents before us, as will be later herein commented upon.
 
 
 3
 The matter is before this Court for consideration of certain motions, the first of which is the plaintiffs-appellants' Motion for Injunction Pending Appeal. Subsequent motions include defendants-appellees' Motion to Require Plaintiffs to File Bond, which will not herein be considered for reasons which will be later apparent, and the motion of certain appellees for an order denying injunctive relief pending appeal. We choose to and will consider the latter motion as a motion to affirm the judgment of the District Court and as having been filed under the provisions of Rule 8(b) of the Rules of this Court.[1] The propriety of such consideration as well as the fact that appellants have been apprised of such nature of the motion will readily appear from Branch (2) of the motion and from the conclusion of the memorandum in support thereof wherein 'it is respectfully concluded that this court should deny the injunctive relief requested by the Appellants and affirm the Order of the District Court * * *.' Responsive to our requests, counsel have with expedition and obvious diligence favored us with exhaustive briefs which have been most helpful in acquainting the Court with the facts and offering citations to applicable legal principles. Without implying criticism but rather to illustrate the breadth of the factual presentation before us, we observe that the briefs, perhaps particularly those of the appellants, go occasionally outside the record, and offer averments not otherwise evidenced. To the extent that they are germane to our consideration, however, all uncontroverted representations have been taken into account.
 
 
 4
 We thus note the contention of the appellees in the motion we consider as one to affirm to the effect that 'unless this appeal is fully and finally disposed of prior to November 28, 1969, the Urban Renewal Plan of the City of Lexington, Kentucky, will be placed in grave jeopardy and probably destroyed.'
 
 
 5
 $1, 2$ The Order from which this appeal was perfected was entered by Judge Mac Swinford in the United States District Court for the Eastern District of Kentucky, and was accompanied by an exhaustive Memorandum. Rather than restate, paraphrase or extensively quote from that Memorandum, due to the exigencies of time urged upon us by all parties, we attach Judge Swinford's Memorandum hereto as Appendix A. In addition to the authorities cited in that memorandum, reference is made to this Court's opinion in Moist v. Belk, 380 F.2d 721, cert. denied, 389 U.S. 960, 88 S.Ct. 338, 19 L.Ed.2d 369 (1967). It is here determined that the District Court properly dissolved the Temporary Restraining Order previously entered by it, overruled the plaintiffs' Motion for a Temporary Injunction and sustained the defendants' Motion to Dismiss and dismissed the complaint as amended, and it is further here determined that it is manifest that the questions on which the decision of the cause depends are so unsubstantial as not to need further argument, and that therefore the motion to affirm is well taken and should be sustained.
 
 
 6
 The judgment of the District Court is affirmed.
 
 APPENDIX A
 
 7
 UNITED STATES DISTRICT COURT EASTERN DISTRICT OF KENTUCKY LEXINGTON
 
 NO. 2080
 
 8
 SOUTH HILL NEIGHBORHOOD ASSOCIATION, INC., ET AL PLAINTIFFS v. GEORGE ROMNEY, ET AL DEFENDANTS
 
 MEMORANDUM
 Filed 11-14-69
 
 9
 Plaintiffs in this action allege that George Romney, Secretary of United States Department of Housing and Urban Development, failed to notify the Advisory Council on Historic Preservation of the proposed demolition of buildings registered pursuant to the National Historic Preservation Act. 16 U.S.C. 470.
 
 
 10
 This case is before the court on plaintiffs' motion for a temporary injunction and defendants' motions to dismiss the complaint. A full disclosure and discussion of the parties and facts which led to this controversy are imperative to a ruling on these motions.
 
 
 11
 The parties to this action include: Plaintiffs (1) South Hill Neighborhood Association, Inc. (South Hill), a non-profit Kentucky corporation having as one of its purposes the preservation of historical buildings; (2) The Bluegrass Trust for Historic Preservation, Inc. (Bluegrass Trust), a non-profit Kentucky corporation having as one of its purposes the preservation of historical buildings; (3) Curtis Harrison, a citizen, taxpayer and President of South Hill; (4) Mrs. Stathis Kafoglis, a citizen, taxpayer and owner of property within the area in controversy; (5) Mr. and Mrs. W. T. Dennis, citizens, taxpayers and owners of property within the area in controversy; and Defendants (1) George Romney, Secretary of the United States Department of Housing and Urban Development (HUD); (2) The City of Lexington, Kentucky, a municipal corporation, duly organized and existing under the laws of the Commonwealth of Kentucky; (3) Honorable Charles Wylie, Mayor of Lexington, Kentucky; (4) The Board of City Commissioners of the City of Lexington, authorized city board for the City of Lexington; (5) Joseph Graves, Harry Sykes, Thomas Fugazzi, duly elected and qualified members of the Lexington Board of City Commissioners; (6) Urban Renewal and Community Development Agency of the City of Lexington (Lexington Urban Renewal Agency), a municipal corporation organized under and existing by virtue of the laws of the Commonwealth of Kentucky; (7) Robert E. Featherston, William R. Embry, Byron Romanowitz, D. C. Noble and H. J. Hagler, duly appointed, qualified and acting members of the Lexington Urban Renewal Agency; (8) Jennie Bryant, director of the Lexington Urban Renewal Agency; (9) Citizens Union National Bank and Trust Company, Inc. (Citizens Union Bank), a national banking corporation organized under and existing by virtue of the laws of the United States of America; (10) Norwood Construction Company, Inc. (Norwood Construction Co.), a Kentucky corporation; and (11) J. Norwood Hodge, President of Norwood Construction Co.
 
 
 12
 The facts out of which this controversy arises are as follows. The Lexington Urban Renewal Agency was formed in 1959 and has continued in existence to date. On April 1, 1965, the Board of City Commissioners of the City of Lexington adopted an ordinance describing area in downtown Lexington to be appropriate for an urban renewal project. An urban renewal plan was promulgated for this area and said plan was approved by the Planning and Zoning Commission of Lexington-Fayette County at a public hearing on July 22, 1965. Notice of this plan was given to each property owner in the area bounded on the north by Main Street, on the west by Patterson Street, on the south by High Street, and on the east by Shreve Avenue. This includes the area in controversy. The method of financing costs for this project was authorized by the Kentucky Court of Appeals on October 1, 1965. See Watkins v. Fugazzi, 394 S.W.2d 594 (Ky.1965).
 
 
 13
 The Lexington Urban Renewal Agency's plan, Ky. R-63, was submitted to the federal authorities on December 30, 1965. On June 7, 1966, HUD approved the December, 1965, plan and authorized federal funding under a Loan and Capital Grant Contract. This plan provided that all land in the project area would be used for commercial purposes and that all land acquired would be cleared of all improvements. On October 19, 1967, the City of Lexington sold $3,500,000.00 of revenue bonds to finance its portion of the cost of the urban renewal project.
 
 
 14
 On July 22, 1968, the plan for the Lexington urban renewal project, R-63, was amended. This amendment to the 1965 plan provided for a Civic Center in an area bounded by Main, Patterson, High and Broadway Streets, and provided for an alternative use of historic preservation in the north half of the 200 block of West High Street. Seven of the buildings involved in this action are in the area with historic preservation designated as an alternate use. Any plan submitted for historic preservation was to meet standards which were explained at public meetings. If the buildings were not restored, they were to be demolished. HUD approved this first amendment on October 18, 1968.
 
 
 15
 In January, 1969, the urban renewal plan, Ky. R-63, was again amended by Lexington Urban Renewal Agency. This amendment provided for an increased expenditure of federal funds, a change in alignment of streets in the area. This amendment retained, however, the alternative use for historic preservation as contained in the July, 1968, plan and amendment. HUD approved this second amendment on May 8, 1969.
 
 
 16
 On May 9, 1969, and June 29, 1969, public advertisements appeared in newspapers inviting competitive proposals to be submitted for part of the land contained in the urban renewal plan, R-63. These proposals were formally opened before the Lexington Urban Renewal Agency on July 10, 1969. Two proposals were submitted at this time. One was from Citizens Union Bank and proposed construction of a $4,000,000.00 to $8,000,000.00 multi-story bank and office building which would ultimately employ one thousand persons. This proposal was determined by the Lexington Urban Renewal Agency to comply with their requirements. The other proposal came from Historic Lexington, Inc. (not a party to this action but of a class which plaintiffs purport to represent). Historic Lexington, Inc.'s proposal was for restoration of the buildings in this area. This proposal was determined by the Lexington Urban Renewal Agency to not be in compliance with their requirements. Historic Lexington, Inc. was notified of the plan's deficiencies and was given an opportunity to correct. Such corrections were not made.
 
 
 17
 Fourteen buildings in the Lexington urban renewal area were denominated 'West High Street Historic District' and on July 10, 1969, were placed on the National Register of historical places. 16 U.S.C. 470. Official notice of this listing appeared on August 5, 1969 in 34 Federal Register.
 
 
 18
 On July 18, 1969, the Lexington Urban Renewal Agency voted to accept the proposal submitted on July 10, 1969, by the Citizens Union Bank. On July 29, 1969, the regional HUD director notified the Lexington Urban Renewal Agency that he had 'no objection to a disposal to the proposed redeveloper.' Exhibit 11 of October 28, 1969, deposition of Jennie F. Bryant. The proposal of the Citizens Union Bank was accepted by the Lexington Urban Renewal Agency on September 3, 1969, and on that date a contract was entered into between the parties. The contract required the land to be cleared of all improvements. The deed to the property was tendered on October 1, 1969.
 
 
 19
 In September, 1969, the Lexington Urban Renewal Agency had advertised for demolition bids for buildings on the property sold to Citizens Union Bank. On October 14, 1969, Jennie Bryant, director of Lexington Urban Renewal Agency, received verbal approval from HUD for demolition of the seven buildings on the 200 block of High Street by Norwood Construction Co. That same day the demolition bid of Norwood Construction Co. was accepted. The demolition contract was entered into between the parties on October 15, 1969. During the evening of October 15, 1969, and the morning of October 16, 1969, demolition was begun on the buildings. This demolition completely destroyed one building and damaged two others.
 
 
 20
 Court action on this controversy has been in the Fayette County Circuit Court and this court. On October 16, 1969, substantially the same plaintiffs commenced action against substantially the same defendants, with the exception of George Romney. A temporary restraining order was issued to prohibit further demolition of the buildings by Norwood Construction Co. Judge Park of the Fayette Circuit Court on October 21, 1969, entered findings of fact and conclusions of law which dismissed the plaintiffs' complaint for failure to state a claim upon which relief could be granted. In dismissing the complaint and dissolving the restraining order, Judge Park said 'this is a final judgment insofar as the plaintiffs' cause of action is concerned.' South Hill Association, Inc., et al v. Urban Renewal and Community Development Agency of the City of Lexington, et al, Fayette Circuit Court First Division No. 25992, Judgment of October 21, 1969. On October 22, 1969, the Kentucky Court of Appeals, sitting en banc, overruled plaintiffs' motion for interlocutory injunctive relief pending appeal.
 
 
 21
 Action was commenced in this court on October 17, 1969. A temporary restraining order was issued by this court on October 23, 1969, and a hearing was held October 31, 1969. At this hearing it was ordered that the parties enter findings of fact and conclusions of law from which this court could enter a judgment. Federal Rules of Civil Procedure 52. This has been done.
 
 
 22
 Relief requested in plaintiffs' amended complaint seeks: (1) a preliminary injunction and a permanent injunction without bond-- a) against federal defendants enjoining them, including withdrawal of prior approval of funds, to remove or destroy the fourteen buildings in question until the court shall determine they have complied with federal law; b) to restrain federal and local defendants from taking steps to demolish or remove buildings in controversy, including affirmative orders to prevent private defendants from carrying out acts; c) to restrain private defendants from demolishing, destroying, or removing said buildings; (2) a declaration of rights among parties and reformation of contracts, deeds and agreements relating to destruction of buildings; (3) an order for defendants to reconstruct and repair damaged buildings; (4) an order for federal defendant to refer the matter to Advisory Council on Historic Preservation for comment and for recommendations; (5) court declaration that plaintiffs have rights arising under National Historic Preservation Act and National Housing Act and for court to issue mandamus against federal defendant ordering him to do his duties under the Act; (6) a grant of judicial review of action taken by HUD and Lexington Urban Renewal Agency in undertaking to demolish said buildings; and, (7) all other appropriate relief to which the plaintiffs may be entitled.
 
 
 23
 The defendant, George Romney (HUD), has moved to dismiss the complaint on the grounds that: (1) plaintiffs lack standing to sue; (2) defendant has no authority over demolition; and, (3) plaintiffs have no right to a hearing.
 
 
 24
 The remaining defendants move to dismiss plaintiffs' complaint on the grounds: (1) that the complaint fails to state a claim upon which relief can be granted; (2) that plaintiffs are not real parties in interest and have no standing or capacity to bring this action; (3) that this court lacks jurisdiction because it appears on the face of the complaint that plaintiffs state no claim under the Constitution, Laws or Treaties of the United States; (4) that all matters and issues herein involved have been fully determined by the proceedings in state court; and, (5) that the plaintiffs are guilty of laches, waiver and are estopped from enforcing any right or remedies they may have under law.
 
 
 25
 Plaintiffs attempt to invoke the jurisdiction of this court under 28 U.S.C. 1331(a) by alleging that the amount in controversy exclusive of interest and costs exceeds $10,000 and that the claim arises under the Constitution, law or treaties of the United States. More specifically plaintiffs allege their claims arise under the National Historic Preservation Act of 1966, 16 U.S.C. 470f; the Housing Act of 1949 as amended, 42 U.S.C. 1451(c), (e), 1455(e), 1456(c)(6), (7), 1460(c); the Administrative Procedures Act, 5 U.S.C. 702, 703; 28 U.S.C. 1361; and 28 U.S.C. 1651.
 
 
 26
 In 1966, Congress enacted the National Historic Preservation Act. 16 U.S.C. 470 et seq. Congress found 'that the spirit and direction of the Nation are founded upon and reflected in its historic past;' and 'that the historical and cultural foundations of the Nation should be preserved * * *.' 16 U.S.C. 470(a), (b). To implement this policy, Congress provided in 16 U.S.C 470f that:
 
 
 27
 'The head of any Federal Agency having direct or indirect jurisdiction over a proposed * * * federally assisted undertaking in any State * * * shall, prior to the approval of the expenditure of any Federal funds on the undertaking * * * take into account the effect of the undertaking on any * * * building, structure, or object that is included in the National Register. The head of any such Federal Agency shall afford the Advisory Council on Historic Preservation * * * a reasonable opportunity to comment with regard to such undertaking.'Congress amended the National Housing Act of 1949 so that it would be compatible with the National Historic Preservation Act. See 42 U.S.C. 1460(b) (2), 1460(c)(6), 1460(c)(9), 1460(c)(10).
 
 
 28
 In maintaining this action plaintiffs seek to couple the before described policy of historic preservation with 5 U.S.C. 702, 703, 28 U.S.C. 1361 and 28 U.S.C. 1651. The Administrative Procedures Act 5 U.S.C. 702 provides:
 
 
 29
 'A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.'
 
 5 U.S.C. 703 of the same Act provides:
 
 30
 'The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement.'
 
 28 U.S.C. 1361 provides:
 
 31
 'The district court shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.'
 
 28 U.S.C. 1651 provides:
 
 32
 '(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law. (b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.'
 
 
 33
 The plaintiffs contend that HUD failed to notify and give a reasonable opportunity for comment to the Advisory Council on Historic Preservation of the proposed demolition of buildings registered pursuant to the National Historic Preservation Act. This, plaintiffs allege, violates 16 U.S.C. 470f and makes HUD (George Romney, Secretary) subject to mandamus action under 28 U.S.C. 1361 and subject to an injunction under 28 U.S.C. 1651. Plaintiffs further contend that the action of HUD would be reviewable under the Administrative Procedures Act. 5 U.S.C. 701 et seq.
 
 
 34
 Defendants deny these allegations and move the court to dismiss the complaint for the reason that plaintiffs lack standing to raise the issues in controversy. This court holds that the plaintiffs lack standing.
 
 
 35
 It is clear from the outset that plaintiffs do not have standing under the recent doctrine established by the Supreme Court in Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Plaintiffs have established neither a logical link between their taxpayer status and the type of legislative enactment attached nor a nexus between their taxpayer status and the precise nature of the constitutional infringement alleged. Supra at 102, 103, 88 S.Ct. 1942. It is clear, therefore, that plaintiffs do not have standing solely on the ground of being federal taxpayers.
 
 
 36
 It is likewise clear that none of the plaintiffs have any real interest in this litigation. None of the plaintiffs own or have owned any of the seven buildings in controversy. None of the plaintiffs had legal control or title to the buildings when they were placed on the National Register. The Lexington Urban Renewal Agency had acquired title to these buildings in February, 1969, and the buildings were placed on the Register in July, 1969. None of the plaintiffs, though informed of the urban renewal plan's alternate use for historic preservation, submitted a proposal for development of the area. The plaintiffs' interest in the litigation is not sufficient to give them standing to bring a mandamus action under 28 U.S.C. 1361, an injunction under 28 U.S.C 1651, or court review of administrative action under 5 U.S.C. 701 et seq. They do not have a personal stake in the outcome. Norwalk Core v. Norwalk Redevelopment Agency, 395 F.2d 920, 927 (2 Cir.1968).
 
 
 37
 Any attempt to gain standing plaintiffs seek under the 'private attorney general' doctrine must also fail. This doctrine as developed in Scenic Hudson Preservation Conference v. Federal Power Commission, 354 F.2d 608 (2 Cir.1965); Office of Communication of United Church of Christ v. Federal Communication Commission, 123 U.S.App.D.C. 328, 359 F.2d 994 (1966); Powelton Civic Home Owners Association v. Department of Housing and Urban Development, 284 F.Supp. 809 (E.D.Pa.1968); and Road Review League v. Boyd, 270 F.Supp. 650 (S.D.N.Y.1967) seems to stand for the proposition that persons or groups who by their activities and conduct have exhibited a special interest in areas involved in the suit may be included as parties aggrieved or adversely affected by agency action.
 
 
 38
 Such a doctrine provides standing under two circumstances: (1) when the plaintiffs are citizens of the area and their direct interests are to be affected, see Norwalk Core v. Norwalk Redevelopment Agency, supra; Western Addition Community Organization v. Weaver, 294 F.Supp. 433 (N.D.Cal.1968); Powelton Civic Home Owners Association v. Department of Housing and Urban Development, supra; and (2) when the group seeking to represent the citizens has been actively engaged in the administrative process and has thereby shown a special interest in the area in controversy. Scenic Hudson Preservation Conference v. Federal Power Commission, supra; Road Review League v. Boyd, supra.
 
 
 39
 Plaintiffs in this action have met neither standard. Those plaintiffs who are citizens of the area, Mrs. Stathis Kafoglis and Mr. and Mrs. W. T. Dennis, have no interest in the seven buildings to be demolished in the 200 block of West High Street. The National Register for historic buildings has been in existence since 1966. Not until July 10, 1969, however, were any of those buildings placed on the Register. The Lexington urban renewal plan, since July, 1968, has provided an alternative use for historic preservation. None of the plaintiffs, however, have submitted such a plan. The plaintiffs have not sufficiently engaged in the administrative process to show a special interest in the controversy so as to be included among those parties aggrieved or adversely affected by agency action. See Green Street Association v. Daley, 373 F.2d 1 (7 Cir.1967); Harrison-Halstead Community Group, Inc. v. Housing and Home Finance Agency, 310 F.2d 99 (7 Cir.1962); South Suburban Safeway Lines, Inc. v. City of Chicago, 285 F.Supp. 676 (N.D.Ill.1968).
 
 
 40
 It is the conclusion of the court, therefore, that the plaintiffs lack standing to sue. If it had been concluded that plaintiffs had standing to invoke the jurisdiction of this court, dismissal of plaintiffs' complaint would still be in order.
 
 
 41
 If plaintiffs did have standing to bring this action, they could still not receive the relief they seek. The Lexington urban renewal plan, Ky. R-63, was first formulated in 1965 and was approved by HUD on June 7, 1966. At this time a 'Loan and Capital Grant Contract' was entered into between HUD and Lexington Urban Renewal Agency. This plan was first amended in July of 1968 and provided for demolition of the buildings or an alternate use of historic preservation. This amendment was approved by HUD on October 18, 1968. The plan was again amended in January of 1969. The amendment carried the same provision as the first concerning demolition or preservation. This second amendment was approved by HUD on May 8, 1969. All of these contracts between the Lexington Urban Renewal Agency and HUD provided for the expenditure of federal funds for demolition of the buildings. At none of these times did any buildings in the plan area appear on the National Register for historic places. HUD was, therefore, under no duty to notify the Advisory Council on Historic Preservation. Rumors of buildings with historic significance is not enough to require HUD to take this action. Placement on the Register is what is required.
 
 
 42
 Based upon the loan and capital grant contracts, the Lexington Urban Renewal Agency sought proposals and bids for the property in question. These bids were to be submitted July 10, 1969. None of the plaintiffs submitted a proposal, but on the same day (July 10) placed the buildings on the National Register. Their contention that subsequent approval by HUD of demolition of some of these buildings without compliance with 16 U.S.C. 470f is without merit. 16 U.S.C. 470f and the duty contained therein refers only to times when plans or amendments to plans are authorized and resulting loan and capital grant contracts are entered between HUD and local urban renewal agencies. Any other construction of the statute would place too great a burden on the urban renewal administrative process. See Judge Thornton's opinion in Kent County Council for Historic Preservation v. George W. Romney, 304 F.Supp. 885 (W.D.Mich. October 2, 1969). Even if plaintiffs did have standing, approval of the last amendment to the plan, Ky. R-63, was prior to the listing of the buildings on the National Register. Thus, 16 U.S.C. 470f imposed no duty on HUD to notify the Advisory Council on Historic Preservation.
 
 
 43
 The issues heretofore resolved are dispositive of the case at bar. There is, therefore no need to consider other allegations made by the parties.
 
 
 44
 It is the opinion of this court: (1) that the Temporary Restraining Order entered on October 22, 1969, should be dissolved; (2) that the plaintiffs' motion for temporary injunction should be overruled, Nashville I-40 Steering Committee v. Ellington, 387 F.2d 179 (6 Cir.1967), cert. denied, 390 U.S. 921, 88 S.Ct. 857, 19 L.Ed.2d 982 (1968); Barron & Holtzoff ss. 1433; and, (3) that the motions to dismiss by all defendants should be sustained.
 
 
 45
 An order in accordance with this memorandum is this day entered.
 
 
 
 [1]
 'Rule 8-- Motion To Dismiss Or Affirm. Within fifteen days after the appeal has been docketed in this court, the appellee may file a motion to dismiss or a motion to affirm. Where appropriate, a motion to affirm may be united in the alternative with a motion to dismiss. * * *
 '(b) The court will receive a motion to affirm the judgment sought to be reviewed on the ground that it is manifest that the questions on which the decision of the cause depends are so unsubstantial as not to need further argument. * * *'