**Laurence GAGE et al., Plaintiffs,**

v.

**COMMONWEALTH EDISON COMPANY
et al., Defendants.**

**No. 71 C 2691.**

United States District Court,
N. D. Illinois, E. D.

Nov. 27, 1972.

Joseph V. Karaganis, Chicago, Ill., for plaintiffs.

James R. Thompson, U. S. Atty., by Larry Cohen, Asst. U. S. Atty., Chicago, Ill., and Isham, Lincoln & Beale, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the motions of defendants Atomic Energy Commission ("AEC") and Commonwealth Edison Company ("Edison") to dismiss for lack of jurisdiction and for failure to state a claim upon which relief can be granted.

This is an action to prevent defendants' alleged deprivation of plaintiffs' rights under the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4321. Jurisdiction is alleged to be founded upon 28 U.S.C. §§ 1331, 1343, and 1361 and upon 42 U.S.C. § 1983 and 5 U.S.C. § 702.

Plaintiffs are farmers (both landowners and tenants) and civic, trade, and religious groups in the community of Brookfield, La Salle County, Illinois. Defendant Edison, a public utility company, plans to construct a nuclear power plant in the area. The proposed plant would cover almost 7,000 acres of land, 4,500 of which would be used for a cooling lake for hot water discharges.

In the process of acquiring land for the installation, Edison has threatened to use its State of Illinois eminent domain power to condemn the property of those landowners who are unwilling to sell. Plaintiffs seek to enjoin Edison from further acquisition of this land prior to the AEC environmental analysis.

Pursuant to the Atomic Energy Act, 42 U.S.C. §§ 2131 and 2133, Edison must obtain the AEC's approval of its project.

Edison's application for a construction permit is currently pending before the AEC. Plaintiffs ask the Court to compel AEC officials to perform their alleged "clear legal duty"—to adopt construction licensing procedures requiring the AEC's consideration of land use prior to (1) issuance of a construction license, (2) commitment of major financial resources by Edison, and (3) damage to the environment resulting from improper land use.

The first of these steps alleged by plaintiffs to constitute AEC "duties" has been recognized by the AEC in the promulgation of an amendment to its regulations, 10 C.F.R. § 50.10 (March, 1972). Thus, since the AEC will consider environmental factors prior to granting Edison a construction license, the focal point of the relief requested is narrowed to consideration of land use prior to steps (2) and (3) listed above.

The applicable portions of NEPA include 42 U.S.C. § 4331(a), which enunciates a federal governmental policy that

". . . all practicable means and measures, including financial and technical assistance, [shall be used] in a manner calculated to foster and promote the general welfare, to create and maintain conditions under which man and nature can exist in productive harmony, and fulfill the social, economic, and other requirements of present and future generations of Americans."

Further, the Act directs at § 4332 that

". . . to the fullest extent possible: . . . (2) all agencies of the Federal Government shall— . . .

"(C) include in every recommendation or report on proposals for . . . major Federal actions significantly affecting the quality of human environment, a detailed statement by the responsible official on—

"(i) the environmental impact of the proposed action,

"(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

"(iii) alternatives to the proposed action. . . ."

Plaintiffs allege, *inter alia*, that this prime farm land should not be used for the facility since farming would constitute the best use of the land from the standpoint of environmental values. They further submit that, if the land must be used for a nuclear power plant, Edison need condemn only 2,500 acres, for alternative cooling methods would require less than one percent of the area planned for the cooling pond.

## ATOMIC ENERGY COMMISSION'S MOTION TO DISMISS

The AEC submits (1) that this action is barred by the doctrine of sovereign immunity; (2) that exclusive jurisdiction over this action rests in the United States Court of Appeals; (3) that this case is not "ripe" for adjudication since federal action is not yet involved; and (4) that NEPA establishes no clear legal duty of the AEC to conduct an environmental analysis prior to Edison's acquisition of land for the proposed facility.

### Sovereign Immunity

 The Court notes first that this doctrine has been held not to apply to suits to compel performance of a specific statutory duty. See Deering Milliken, Inc. v. Johnston, 295 F.2d 856 (4th Cir. 1961). Section 102 of NEPA (42 U.S.C. § 4332) clearly enumerates specific duties of all federal agencies. Thus, since this is an action to compel the performance of an alleged duty under that section, it is not barred by sovereign immunity. La Raza Unida v. Volpe, 337 F. Supp. 221 (N.D.Cal.1971). Further, this doctrine has been held to be waived when the agency action complained of is governed by the Administrative Procedure Act, 5 U.S.C. § 500 et seq. See, e. g., Scanwell Laboratories, Inc. v. Schaffer, 137 U.S.App.D.C. 371, 424 F.2d 859, 873 (1970). Pursuant to 42 U.S.C. § 2231, actions of the AEC are governed by that Act; hence, allegations of improper action by the AEC render sovereign immunity is inapplicable in this case.

### Appellate Court Jurisdiction

 One basis for the AEC's contention that the Court of Appeals has exclusive jurisdiction over this action is 28 U.S.C. § 2342(4), which provides for appellate determination of the validity of any final order of the AEC made reviewable by 42 U.S.C. § 2239. This Court, however, cannot accept the argument that the AEC's failure to perform an alleged duty required by NEPA constitutes a "final agency *order*" within the meaning of the statute. The Administrative Procedure Act defines an agency order as

" . . . the whole or a part of a *final* disposition . . . in a matter other than rule making but including licensing."

5 U.S.C. § 551(6) (emphasis added)

Since the AEC's failure to act cannot become a final disposition unless or until it grants Edison a construction license without having prepared the requisite environmental analysis, such failure to act cannot constitute a final agency order conferring appellate court jurisdiction.

The AEC contends further that the Complaint challenges the rule-making procedures of that agency. Jurisdiction for such a challenge lies exclusively in the Court of Appeals pursuant to 28 U.S.C. § 2342. However, plaintiffs argue persuasively that in the instant action they are contesting not the AEC's rule-making but rather its failure to conform to NEPA requirements of its licensing procedures and that their challenge of AEC rule-making is pending in the District of Columbia Circuit Court of Appeals.

In further response to the AEC's contention that this action is appropriate only in the appellate court, plaintiffs have asserted that they are unable to seek appellate review of the agency's licensing procedures pursuant to 28 U.S.

C. § 2344, since only parties to licensing proceedings can bring such an action. Consequently, their principal position has been that this Court must take jurisdiction in order to prevent irreparable harm to them. Although this appellate remedy was not available to plaintiffs at the time they filed their Complaint, the Court is informed that the AEC has published the notice of hearing in the licensing proceedings. Since this notice affords plaintiffs the opportunity to become parties to those proceedings, pursuant to 28 U.S.C. § 2344, they can now avail themselves of appellate review of the AEC's licensing procedures.

A Federal District Court has jurisdiction to compel performance by an agency of its clear, non-discretionary legal duty, if statutory judicial review is unavailable or inadequate to protect plaintiffs' rights. Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); Jewel Companies, Inc. v. F. T. C., 432 F.2d 1155 (7th Cir. 1970). Although the duties set forth in NEPA § 102 are clear and non-discretionary, Calvert Cliffs' Coordinating Committee v. AEC, 146 U.S.App.D.C. 33, 449 F.2d 1109, 1114–1115 (1971), this Court is convinced that the available appellate remedy is sufficient to grant the relief which plaintiffs request, upon proof of their claims. Should the Court of Appeals find that the existing licensing procedures of the AEC are invalid in the light of NEPA § 102, it can enjoin, set aside, or suspend those procedures pursuant to 28 U.S.C. § 2349 in order to effect compliance with NEPA. Accordingly, this Court need not take jurisdiction of this action in order to prevent irreparable harm to plaintiffs.

As to plaintiffs' claim that this Court has jurisdiction, pursuant to 5 U.S.C. § 704, to review final agency action, the Court will consider first the definition of "agency action" in the Administrative Procedure Act, 5 U.S.C. § 551(13):

"(13) "agency action" includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."

Although the Court agrees with plaintiffs that the AEC's alleged failure to prepare an environmental analysis prior to Edison's land acquisition constitutes "agency action" within the meaning of the Administrative Procedure Act, the question remaining is whether such action is final in nature so as to come within the purview of 5 U.S.C. § 704.

The Court is of the opinion that the AEC's alleged failure to act can constitute "final agency action" only if it can be established that the AEC has a clear legal duty under NEPA so to act. Absent such a duty, the AEC's inaction cannot be construed as final, for "final" necessarily implies that nothing is forthcoming in a certain course of action. The AEC, pursuant to the recently promulgated amendment to its licensing regulations, 10 C.F.R. § 50.10, can be expected eventually to prepare an environmental analysis and to report thereon prior to the issuance of a construction permit. The failure to do so at any given time in advance of such issuance in itself cannot imply that it will fail utterly to prepare the analysis prior to issuing a permit; such failure would become final only upon the issuance of a permit without having prepared the analysis. Correspondingly, the AEC's alleged present failure to prepare an environmental analysis prior to Edison's land acquisition cannot be considered final unless (1) the AEC has a clear statutory duty to prepare it prior to that time and (2) the land acquisition has occurred without the AEC's preparation of the analysis. The question of whether NEPA enunciates such a clear legal duty will be discussed *infra* under that heading.

*Justiciability*

Whether this action is "ripe" for disposition appears to depend upon whether

the AEC's alleged failure to act in preparing the environmental analysis constitutes federal action. The AEC submits that no federal action is involved since Edison's land acquisition prior to the AEC's environmental impact report is private action rather than federal action; further, it suggests that the only conceivable claim of federal action lies in the anticipated agency action of granting Edison a construction permit for the proposed site.

Asserting that federal action clearly is involved, plaintiffs claim that NEPA applies as soon as federal participation becomes possible, citing, *inter alia*, La Raza Unida v. Volpe, 337 F.Supp. 221 (N.D.Cal.1971). They declare that eventual federal participation became certain in the instant case at least as soon as Edison applied for a construction permit for a nuclear generating facility, since such a project could not be undertaken without federal approval. Emphasizing the importance of action prior to the occurrence of environmentally-damaging activities, plaintiffs urge that the AEC's alleged failure to prepare an environmental impact statement heretofore constitutes a failure to act in compliance with NEPA, which failure continues to result in impairment of environmentally desirable land use.

Plaintiffs' argument that federal participation in Edison's proposed plant is certain since Edison has applied for a construction permit is in error. The conflict between the parties on this issue arises from various interpretations of "participation". Whereas the AEC assumes that it does not participate in a project until it has given at least location *approval* to that project, plaintiffs define the agency's participation in a project as the AEC's *consideration* of that project for approval.

The Court notes that in *La Raza, supra*, the case upon which plaintiffs principally rely, and in the other cases considered which have found federal action present, the common denominator was the factor of location approval by an agency of the federal government. Thus, it appears that the AEC's alleged failure to prepare an environmental impact statement prior to an applicant's land acquisition cannot constitute federal action absent either prior federal action (amounting to location approval) or a clear statutory duty so to act. Since the AEC has not given location approval (much less approval of another sort) to Edison's proposed nuclear facility, this Court is unable to adjudicate the claim against the AEC unless a clear statutory duty of the agency under NEPA is evinced.

*Clear Legal Duty*

Although the court in Calvert Cliffs' Coordinating Committee, Inc. v. AEC, *supra*, concerned with applying NEPA obligations to the AEC's pre-licensing activities, extended the agency's obligations under NEPA to include the preparation of an environmental impact analysis prior to the granting of a construction permit, it did not explore the applicability of NEPA § 102 directives to the period prior to land acquisition. In considering the possibility of ordering such a pre-acquisition analysis in the instant case, this Court recognizes the undesirability, as well as the impracticality, of holding that a pre-acquisition study is required by NEPA in all AEC construction licensing procedures.[1] Indeed, the

1. Where a federal agency has no immediate control over an entity, such as Edison, which applies to it for a permit, the agency can have no feasible means of (1) ascertaining when and if such site acquisition will take place in order to complete the environmental impact analysis prior to acquisition, (2) ascertaining location of a site in order to study environmental impact of a proposed use therefor, when the facility might not be applied for until a time subsequent to the land acquisition, or (3) providing for timely completion of the environmental impact statements when the number and frequency of construction permit applications and site acquisitions are completely unpredictable.

prospective consequences of such a NEPA directive to a federal agency are ominous at best.

The Court realizes that the present AEC procedures can result in precluding some environmental factors (e. g., present land use) from consideration in the impact analysis, thereby giving an advantage to the applicant who already has completed the site acquisition.[2] However, until the AEC receives notice by an application for a permit it cannot begin its environmental survey.

Accordingly, this Court finds that NEPA § 102 imposes no clear legal duty upon the AEC to prepare an environmental impact statement prior to an applicant's acquisition of land for a proposed site. Neither can NEPA § 102 impose a clear legal duty upon the defendant members of the AEC, for the same reasons expressed hereinabove.

### COMMONWEALTH EDISON COMPANY'S MOTION TO DISMISS

▆▆▆ Plaintiffs have brought the action against Edison as a violation of 42 U.S.C. § 1983, alleging that Edison, under color of state law by reason of its eminent domain power, is depriving plaintiffs of their rights under NEPA. The jurisdictional counterpart of § 1983, 28 U.S.C. § 1343(3), has been alleged as a jurisdictional basis for the action, along with 28 U.S.C. § 1331 and 28 U.S.C. § 1361.

Edison has moved to dismiss, asserting (1) that the claim against Edison lacks jurisdictional basis and (2) that plaintiffs have failed to state a claim upon which relief can be granted.

*Basis for Jurisdiction*

Edison correctly contends that this Court does not have jurisdiction pursuant to 28 U.S.C. § 1343, which provides in relevant part that

2. Indeed, in the instant case, Edison already has acquired over 90 percent of the land need for the proposed facility.

3. For a more extensive discussion of the correlation and distinctions between 42

"[t]he district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

. . . . . .

"(3) to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States . . . . "

Even though plaintiffs' claims may be brought under 42 U.S.C. § 1983 (see discussion *infra*), the NEPA rights alleged to be violated are secured neither by the Constitution nor by an Act of Congress providing for equal rights; thus, these rights do not fall within the purview of 28 U.S.C. § 1343.[3] Neither is there jurisdiction solely on a federal question basis since plaintiffs failed to allege the jurisdictional amount required by 28 U.S.C. § 1331.

Plaintiffs urge that this Court can sustain a type of "pendent" jurisdiction over the claim against Edison, based on the 28 U.S.C. § 1361 jurisdiction over the claim against the defendant members of the AEC. However, the Court need not reach this question since jurisdiction over that claim cannot be sustained, pursuant to the discussion of the merits of that claim, *supra*.

▆▆▆ Accordingly, this Court holds that it is without jurisdiction over the subject matter of the claim against Edison.

*Claim under 42 U.S.C. § 1983 and NEPA*

▆▆▆ The action against Edison presents an apparently valid claim under 42 U.S.C. § 1983, which provides that

U.S.C. § 1983 and 28 U.S.C. § 1343 see Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 1117 at footnote 7, 31 L.Ed.2d 424 (1972).

"[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution *and laws*, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[emphasis added]

Although Edison argues that only actions involving deprivation of *Constitutional* rights are cognizable under § 1983, the provision "Constitution and laws" clearly embraces any action involving the deprivation under color of state law of rights secured by a law of the United States. Gomez v. Florida State Employment Service, 417 F.2d 569, 579 (5th Cir. 1969); Bomar v. Keyes, 162 F.2d 136, 139 (2d Cir. 1947). See also the discussion in Lynch v. Household Finance Corp., 405 U.S. 538, 92 S. Ct. 1113, 1117 at footnote 7, 31 L.Ed.2d 424 (March 23, 1972). In the instant case, the "law" is NEPA, 42 U.S.C. § 4332.

Assuming that plaintiffs have stated the basis for a valid claim under § 1983, the Court must next consider what rights of plaintiffs under NEPA § 102 are being infringed by Edison's acquisition of land for its proposed nuclear facility. Plaintiffs allege deprivation from Edison's land acquisition prior to its receipt of a construction permit from the AEC; they charge that, if the AEC's environmental impact statement indicates that the optimum land use for the subject area is farming and the construction permit is denied, they will have been deprived of their farms needlessly.

However, the Court notes that most of the plaintiffs are not owners of the property in question; many are tenant farmers; others are various civic groups and residents of the general area whose standing in this action is highly questionable, though not in dispute.

▮ The owners, who may be subject to condemnation proceedings in the future, have a legitimate concern about the involuntary deprivation of their property; however, even these plaintiffs have not yet suffered any harm nor have been deprived of any rights, for Edison has not yet commenced any eminent domain proceedings. Furthermore, Edison has agreed that it will give plaintiffs at least 60 days notice prior to issuing any condemnation proceedings against their property, thereby affording those plaintiffs opportunity to seek judicial redress when and if the threat of condemnation becomes imminent. At this time, however, the Court concludes that their action herein is premature, for the Court will not restrain a party in the absence of a real and imminent threat to the plaintiffs in suit.

▮ With respect to tenants and others having lesser estates in the subject property, the Court must recognize the right of a landowner freely to alienate his property; a tenant is always subject to termination by his landlord. Edison's sole activity in acquiring the property to date has been confined to voluntary acquisition; there is no basis for enjoining such present action since plaintiffs are not suffering irreparable harm therefrom.

Accordingly, the Court will not interfere with the right of individuals and corporations to do business or to purchase and sell real estate for any of a multitude of uses. Moreover, even if Edison is denied a construction permit for the site in question, such denial would not of itself prevent Edison from utilizing the property to best advantage from an environmental standpoint.

Edison further submits that NEPA § 102 operates only upon federal agencies and not upon individuals or corpora-

88

tions. The Seventh Circuit upheld this view in Bradford Township v. Illinois State Toll Highway Authority, 463 F.2d 537, 540 (7 Cir. 1972), wherein that court stated that

" . . . the procedural requirements of the National Environmental Policy Act are applicable only to federal agencies,"

and that

"[t]he declarations of a national environmental policy and a statement of purpose . . . are not sufficient to establish substantive rights."

Moreover, in Boston v. Volpe, 464 F.2d 254 (1st Cir. July 17, 1972), the court refused to issue an injunction against a Port Authority on the basis that, since the project in suit had not yet received location approval, it was not yet a federal action subject to NEPA. These actions are closely analogous to the instant case; accordingly, this Court must deny any relief to plaintiffs at least until such time as the action complained of is federal in nature and gives rise to reasonable apprehension of harm to plaintiffs.

While recognizing the importance of environmental goals and values, this Court is compelled to hold that it does not have jurisdiction over the instant action, either in Count I or in Count II. Further, even if the Court did have jurisdiction, plaintiffs have failed to state any claim upon which relief can be granted at this time.

Accordingly, it is hereby ordered, adjudged and decreed that the motion of defendants Atomic Energy Commission, James Schlesinger, James T. Ramey, Wilfrid E. Johnson and Clarence E. Larson to dismiss and the motion of defendant Commonwealth Edison Company to dismiss are granted and that this cause is dismissed without prejudice to any future cause of action in this matter over which this Court has jurisdiction.