Kent EDWARDS et al.,
Plaintiffs-Appellees,

v.

FIRST BANK OF DUNDEE, an Illinois
State Bank, Defendant-Appellant.

No. 75–1655.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 15, 1976.

Decided April 21, 1976.

See also 393 F.Supp. 680.

Edward W. Barrett, Chicago, Ill., for defendant-appellant.

Thomas P. Young, Elgin, Ill., for plaintiffs-appellees.

Before HASTINGS and SWYGERT, Circuit Judges, and EAST,* District Judge.

EAST, District Judge.

Defendant First Bank of Dundee, an Illinois State Bank, (Bank) appeals from an order of the District Court preliminarily enjoining the Bank from demolishing its privately owned building, hereinafter referred to as the Brinkerhoff House, until such time as the Federal Deposit Insurance Corporation (FDIC) authorizes the Bank's application for a change of location of its banking facilities to the Brinkerhoff House property, or receives an Environmental Impact Survey (EIS) and an advisory opinion from the Advisory Council on Historic Preservation. We reverse.

Jurisdiction in the District Court is asserted under the Federal Deposit Insurance Corporation Act (FDICA), 12 U.S.C. § 264 et seq., the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321 et seq., and the National Historic Preservation Act of 1966 (NHPA), 16 U.S.C. § 470 et seq.

The pertinent background facts are:

The Bank is an insured bank under the provisions of the FDICA, maintaining its main banking facility in East Dundee, Illinois, with a drive-in banking facility located some 900 feet distant across a stream in the Village of West Dundee (Village). Because of the present and anticipated future growth of its business, the Bank has determined that its present facility is entirely inadequate to service its business needs and the banking requirements of its customers. In response to those needs, the Bank purchased for an aggregate purchase price in excess of $200,000 two parcels of property adjacent to its drive-in facility. Upon one of the properties is located a structure well known in the Village as the Brinkerhoff House. The acquisition of these two parcels, together with the drive-in banking facility area, put the Bank in title to an entire platted block of real property, an amount of land sufficient for the construction of the proposed new bank building. The entire project is privately financed, and is without federal funding or assistance in any amount.

The Brinkerhoff House is a three-story pioneer residence in the Village. Immediately prior to the Bank's purchase, it was owned by the Board of Library Directors of the Township of Dundee (Library Directors) and served as the public library building from 1962 through April, 1965. In 1973, the Library Directors determined to sell the property and build a new library building. The House was vacated and since has been vandalized and is in disrepair.

In November, 1973, pursuant to applicable law, the Library Directors publicly advertised the sale by publishing a notice thereof in a local newspaper and requesting bids for the property. The Bank submitted a bid to purchase the property at a price of $135,000. At a public meeting of the Library Directors, the bid of the Bank was accepted. An executory contract for sale was entered into and on April 1, 1975, pursuant to the terms of its contract, the Bank took title to the Brinkerhoff House property.

During the entire negotiations for the purchase, it was common knowledge throughout the Village that the Bank contemplated the demolition of the Brinkerhoff House to prepare for the construction of its new building facility.

Interested community members sought to save the Brinkerhoff House from demolition. The Bank offered to donate the structure to any organization which would sponsor its relocation for preservation and to contribute to the relocation enterprise the cost and expense of demolition. No individual or group of individuals accepted the Bank's offer.

On March 7, 1975, more than a year after the Bank contracted to purchase the Brinkerhoff House property, a certain geographical area known as the Dundee Township

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

Historical District was entered in the National Register of Historical Places (National Register) pursuant to the provisions of the NHPA. The Brinkerhoff House, as well as every other building within the Village, is located within this historic district. The House is not separately listed in the National Register and is not a national historic landmark, but it was separately listed in the National Register Nomination Form submitted with respect to the Dundee Township Historic District. The Bank was not a party to these proceedings.

The plaintiffs-appellees (Edwards Group) instituted the cause in the District Court seeking to restrain the Bank's demolition of the Brinkerhoff House alleging in substance that:

The Brinkerhoff House is a pioneer residence in the Village of significant cultural and historically valued architecture, and is presently located within an area that has been entered in the National Register of Historic Places created by the NHPA.

Further, the Bank has applied to the FDIC for permission to relocate its business premises in East Dundee to the full block space of property, a part of which is now occupied by the Brinkerhoff House, and intends to demolish the Brinkerhoff House if the change of banking facility location is approved.

The Edwards Group then asserts the legal conclusion that NHPA and NEPA require the FDIC to make an environmental impact report and to obtain an opinion from the Advisory Council on Historic Preservation prior to approving the aforesaid request for change of location.

The Edwards Group originally joined the Village as a party defendant and sought to restrain the Village from issuing a demolition permit to the Bank for the demolition of the Brinkerhoff House in clearance of the land for rebuilding. The District Court correctly dismissed the action against the Village. *Bradford Township v. Illinois*

State Toll Highway Authority, 463 F.2d 537, 539 (7th Cir. 1972), *cert. denied*, 409 U.S. 1047, 93 S.Ct. 518, 34 L.Ed.2d 499 (1972); *Biderman v. Morton*, 497 F.2d 1141, 1146–47 (2d Cir. 1974); *O'Brien v. Brinegar*, 379 F.Supp. 289, 290 (D.Minn.1974); and *Ely v. Velde*, 451 F.2d 1130, 1139 (4th Cir. 1971). The Village has since duly issued to the Bank a permit for the demolition of the Brinkerhoff House.

The District Court concluded that it had subject matter jurisdiction and the Edwards Group had standing, and denied the Bank's motion to dismiss.

Upon the joining of issues, the District Court on June 2, 1975 entered its order dated May 30, 1975, granting the preliminary injunction from which the Bank appeals.

The Bank asserts four issues for review; however, we deem the decisive issue to be:

Did the FDICA in conjunction with NEPA or NHPA confer jurisdiction on the District Court to enjoin the demolition of a privately owned structure?

In order to appropriately reach that issue, we at the outset assume *arguendo*[1] that the Edwards Group held the prerequisite legal standing as private individuals and association of individuals to assert their claim.

*Edwards Group's Contentions:*

■ The Edwards Group contends that the FDICA § 1816, 12 C.F.R. §§ 303.3 and 304(g), requires the Bank to obtain permission from the FDIC to establish or move its main office or branch. Further, that among the considerations the FDIC must consider in acting upon the application of the Bank to move its office are the inconvenience and needs of the community to be served by the Bank. The Edwards Group correctly contends that the District Court has jurisdiction over the Comptroller of Currency (Comptroller) in the management of the provisions of FDICA, and the regulations thereunder.

*South Hill Neighborhood Association v. Romney*, 421 F.2d 454, at 460–61 (6th Cir. 1969), *cert. denied*, 397 U.S. 1025, 90 S.Ct. 1261, 25 L.Ed.2d 534 (1970).

---

1. We entertain grave doubt that the Edwards Group has proper legal standing to assert their claim, however, we decline in this case to decide that issue. *See O'Brien, supra* at 290; and

We believe they erroneously conclude that the District Court had jurisdiction to enjoin non-federal entities from directly frustrating or preempting the federal agencies' responsibilities to prevent violation of the environmental and historical protections provided for under NEPA and NHPA, and the regulations thereunder. To support that contention, they rely upon the rationales and rulings in *Billings v. Camp*, 4 E.R.C. 1744 (D.D.C. Oct. 4, 1972) (not officially reported); *Thompson v. Fugate*, 347 F.Supp. 120 (E.D.Va.1972); and *Citizens Committee for Hudson Valley v. Volpe*, 425 F.2d 97 (2d Cir. 1970). Their reliance upon those authorities is misplaced and we reject the contention.

*Discussion:*

Section 102 of the NEPA (42 U.S.C. § 4332) states in relevant part:

". . . all agencies of the Federal Government shall—

". . .

"(C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

"(i) the environmental impact of the proposed action."

Section 101 of the NHPA (16 U.S.C. § 470a) authorizes the Secretary of the Interior to maintain a National Register of districts, sites, buildings, structures, and objects significant in American history, architecture, or culture. Section 106 of the NHPA (16 U.S.C. § 470f) requires any federal agency, assertedly in this case the Comptroller, under FDICA having (a) direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking, or (b) authority to license any undertaking, to take into account the effect of the undertaking on any district, site, building or structure included in the aforesaid National Register prior to the approval of the expenditure of any Federal funds on the un-

dertaking or prior to the issuance of any license.

This court has noted in *Bradford Township, supra* at 540:

"The declarations of a national environmental policy and a statement of purpose appearing in these acts [NEPA and NHPA] are not sufficient to establish substantive rights."

Hence, the jurisdictional question before us is not whether the policies enunciated in the NEPA or NHPA might under some circumstances apply to the Brinkerhoff House, but rather whether the substantive provisions of these Acts may be applied to enjoin purely private activities which require no participation by any agency of the federal government.

■ The basic flaw in the Edwards Group's thesis, that the Bank's private project of the demolition of its building is subject to the provisions of either NEPA or NHPA, is the total absence of any federal involvement; viz., "major Federal actions" (NEPA), "federally assisted undertaking" or "having authority to license any undertaking" (FDICA, as dictated by NHPA § 470f; (a) and (b), *supra* at page 9 hereof).

To illustrate the fallacy of the Edwards Group's reliance upon the rationales of *Billings* and *Thompson*, we pinpoint the absence in this case of two factors essential to the granting of the relief sought.

■ First, the Bank's *undertaking* or project of demolishing the structure in preparation to putting the real property to another use is not federally funded or assisted in any respect. *Ely v. Velde*, 363 F.Supp. 277, 285 (E.D.Va.1973):

"In order for a project to be 'federally assisted' within the meaning of NHPA or a 'major Federal action' within the meaning of NEPA, it must be wholly or partially funded with federal money. It is this money which imparts a federal character to a project and gives rise to the necessity of meeting the statutory requirements of those two acts. Without such federal funds, the project remains local in nature."[2] *O'Brien, supra* at 290.

---

**2.** While the decided cases under the NHPA are relatively few in number, it is clear that the scope of the NHPA is no broader than that of the NEPA. *See Ely v. Velde*, 451 F.2d 1130 (4th Cir. 1971).

See *Named Individual Members of San Antonio Conservation Society v. Texas Highway Dept.*, 446 F.2d 1013, 1028 (5th Cir. 1971); *Silva v. Romney*, 473 F.2d 287, 289–90 (1st Cir. 1973).

Second, the Edwards Group has not chosen to join any federal officer as a party defendant. *Bradford Township, supra; Ely v. Velde*, 451 F.2d 1130, 1139 (4th Cir. 1971); *Gage v. Commonwealth Edison Co.*, 356 F.Supp. 80 (N.D.Ill.1972); *O'Brien, supra; Biderman, supra; Movement Against Destruction v. Volpe*, 361 F.Supp. 1360, 1383 (D.Md.1973), aff'd, 500 F.2d 29 (4th Cir. 1974). *See Named Individual Members of San Antonio Conservation Society, supra.*

■ Lastly, it is manifest that the Bank's project of demolishing the privately owned structure for clearance of the property to facilitate the construction of a new building is a private act over which the Comptroller has no authority, either expressed or implied under FDICA, and the regulations thereunder, either to grant or withhold the granting of a federal license to demolish a privately owned building. Any other reading of the express language of the Comptroller's authority would constitute a legerdemain in which we will not engage.

Whether or not the Comptroller will ultimately, within his discretionary consideration of the factors enumerated in § 1816, 12 C.F.R. §§ 303.3 and 304(g), grant or withhold the granting of the Bank's application to *transfer its banking business location* to any new structure which may ultimately be constructed upon the subject property is beside the point.

In *Billings*, the plaintiffs sought to enjoin the Comptroller of Currency and Deputy Comptroller of Currency from granting an application to open a branch bank in an historic and architecturally significant locale until those defendants had complied with the provisions of NEPA. That action was directed against the Comptroller, and not the private bank seeking the authority, and involved a banking act (opening a branch office in a historical area) over which the Comptroller had jurisdiction under the Act. The situation in *Billings* is not presently before this court.

In *Thompson*, the plaintiffs sought to enjoin the planning and construction of an urban highway through an historic area. The principal defendant was the Secretary of Transportation, a federal officer, with federal responsibilities for the administration of various *federally funded or assisted* highways. *Thompson* is manifestly inapplicable to the private enterprise involved in this case.

The Edwards Group has cited other authorities in their brief which we have read and find of no bearing on the issues in this case.

We conclude that the District Court:

(1) Did not have subject matter jurisdiction of the Edwards Group's claim against the Bank under the provisions of either NEPA or NHPA because of the total absence of federal funding or assistance; and

(2) Did not have similar subject matter jurisdiction under FDICA, through the dictates of NHPA, (b) *supra*, and the regulations thereunder, because the Comptroller has no licensing authority under FDICA of the Bank's management of its non-banking business properties, particularly the demolition of the Brinkerhoff House structure in order for the Bank to put its privately owned property to another use.

The District Court's order dated May 30, 1975, and entered on June 2, 1975, preliminarily restraining the Bank from engaging in its private act of demolishing the Brinkerhoff House structure until compliance with NHPA and NEPA was obtained, is reversed and the cause is remanded to the District Court for dismissal of the cause.

Cost on appeal shall not be granted to any party.

REVERSED AND REMANDED.