### KENT COUNTY COUNCIL FOR HISTORIC PRESERVATION, Plaintiff,

v.

### George W. ROMNEY, Secretary of the Department of Housing and Urban Development, Defendant.

### KENT COUNTY COUNCIL FOR HISTORIC PRESERVATION, Plaintiff,

v.

### Chris SONNEVELT et al., Defendants.

### Civ. Nos. 6174, 6175.

United States District Court
W. D. Michigan, S. D.

Oct. 3, 1969.

Reuben Clark, Michael R. Klein, Washington, D. C., Edward M. Smith, Grand Rapids, Mich., for plaintiff, Kent County Council for Historic Preservation.

Carl F. Goodman, Atty., Civil Division, Dept. of Justice, Washington, D. C., for defendant, George W. Romney, Secretary of the Department of Housing and Urban Development.

Steven L. Dykema, City Atty., Grand Rapids, Mich., for defendants Chris Sonnevelt, Mayor of the City of Grand Rapids, and others.

Varnum, Riddering, Wierengo & Christenson, by Clifford C. Christenson, Jon F. DeWitt, Grand Rapids, Mich., for intervenor, Union Bank & Trust Co.

### MEMORANDUM

THORNTON, District Judge.

"This is a case of first impression insofar as the National Historic Sites Act of 1966, 16 U.S.C. § 470 et seq. is concerned, certainly in its application to the urban renewal process. Plaintiff is unaware of any reported decisions constru-

ing this Act. Potentially, it is a landmark case. For as it is true of the Act itself, the issue at hand is the capacity of the American people to prevent improvidence in matters relating to the conservation of our natural and man-made heritage."

Thus reads plaintiff's brief in support of its motions for preliminary injunction in the two cases before the Court (now consolidated for trial purposes). The defendants include George W. Romney, Secretary of the Department of Housing and Urban Development, the Mayor of the City of Grand Rapids and numerous City administration officials, and the Union Bank and Trust Company. The Court set down plaintiff's preliminary injunction motions for early hearing because of the imminence of the demolition (Old Grand Rapids City Hall), which plaintiff seeks to at least forestall, if not prevent entirely. Prior to the commencement of the hearing there were filed motions to dismiss by all defendants, lack of jurisdiction being a basis common to all. Also advanced are contentions of non-retroactivity of the applicable legislative enactments and lack of standing. The preliminary injunction hearing, therefore, was held in abeyance so as to give precedence to a hearing on and determination of the various motions to dismiss.

We quoted above a paragraph from the brief of plaintiff because of the statement therein that the "issue at hand is the capacity of the American people to prevent improvidence in matters * *." It strikes us as incongruous that the plaintiff should be concerned with *improvidence* in relation to the conservation or lack of conservation of this building, in the light of the *improvidence* which would occur with the ensuing chaos concomitant with the realization of plaintiff's objective. In this connection we set forth below the factual background of this controversy, which we believe is substantially agreed to by the parties and which we present in the language used by the Union Bank and

Trust Company in its brief in support of its motion to dismiss.

## FACTUAL BACKGROUND

1. The plaintiff Kent County Council for Historic Preservation (hereinafter the plaintiff or the Council) is a Michigan non-profit corporation, incorporated in October of 1968, having as its purpose the promotion of the rehabilitation or restoration of historical sites, buildings or objects.

2. Part I of the City of Grand Rapids' application for Loan and Grant for the project was approved January 9, 1961, by the Housing and Home Finance Agency.

3. The City adopted an urban renewal plan on April 4, 1961, which plan was designed as a total clearance project with all of the buildings within the renewal project to be moved or cleared and the sites then redeveloped for public and commercial uses. One of the sites to be cleared included the old Grand Rapids City Hall.

4. On August 15, 1961, the City and the United States executed a Loan and Capital Grant Contract for federal financial assistance under Title I of the Housing Act of 1949, which contract approved the expenditure of federal funds on the City's urban renewal plan, designated Mich. R–34.

5. In February of 1964, the City requested bids for the purchase of various lands in the urban renewal project, including the City Hall site and adjacent property to the north. Addendum No. 1 provided that:

> * * * the date for surrendering up possession of (the City Hall) * * * shall be postponed from time to time until such a date, not more than 30 days, after the vacancy of the same by the indicated public bodies and its agencies and instrumentalities and the completion of demolition of structures thereon * * *

6. On May 4, 1964, the Bank submitted its written bid for the purchase of the tract described in 5 above, including

a narrative description of the Bank's redevelopment plan which stated:

The building to be constructed, together with adequate provision for off-street parking for this building, requires the acquisition of all of Sites 6 (the City Hall) and 4C.

7. The Bank attached conditions to its bid, among them being:

For these reasons, it is a condition of this bid that the bid on both sites must be accepted or neither can be accepted.

8. The Bank's bid was accepted and specifically, the condition imposed by the Bank set forth in 7 above was accepted.

9. The Bank agreed to pay $660,473.-47 for all of the land in the parcel including the City Hall site. It has paid for all of the land except the City Hall site which the City was unable to deliver until the new City Hall was completed. The Bank has deposited $11,330.00 with the City as part payment of the agreed price of the City Hall site, with the balance of $104,464.13 to be paid when possession is delivered.

10. The Bank and the City executed a Land Disposition Contract on March 15, 1965, whereby the City agreed to sell and deliver the parcels here involved to the Bank. The contract was and is a single contract for the sale of not only the City Hall site, but also the land north of City Hall.

11. The land disposition contract expressly provided for delayed delivery of the City Hall site following the City's relocation into new facilities and the demolition of old City Hall.

12. The Bank proceeded to develop the parcel it had purchased by constructing a ten-story Bank office building at a cost of more than $6,000,000.00 by engaging Carson, Lundin and Shaw, architects, to do preliminary architectural site work planning for the portion of the site to the north and south of the new bank building at a cost of $51,500.00, and by engaging Wold, Bowers, DeShane & Covert to prepare working drawings and specifications for a second office building to the north at a cost in excess of $143,000 and by requesting bids on the building and off-street parking facilities to be built immediately north of its present office building.

13. The Bank cannot proceed with the construction of the north building and parking facilities unless it has the City Hall land for development as parking space in order to provide adequate customer parking for the Bank's use, to meet its contractual obligation to the existing tenants for parking and to comply with the requirements of the urban renewal plan.

14. If the Bank is delayed six months in constructing the north building and the additional off-street parking facilities, it will suffer damages approximating $139,500.00 in additional construction costs, lose tenants who are committed for space in the north building, and continue to lose customers for its banking and restaurant business due to inadequate parking.

15. Urban Renewal Project Mich. R-34 has been completed so far as the Department of Housing and Urban Development is concerned; approval of completion was granted February 26, 1968, by a Certificate signed by the Assistant Regional Administrator for Renewal Assistance which reads in part:

I have reviewed the foregoing Certificate of Completion and of Gross and Net Project Cost and have determined that the project has been fully completed; * * *

16. In letters to representatives of plaintiff, HUD has officially taken the position that the National Historic Preservation Act of 1966, involved here by plaintiff, has no application to this urban renewal project or to the demolition of old City Hall.

* * *

It should be clear from the above that the Old Grand Rapids City Hall is on a parcel which is only a small segment of a substantial renewal plan area, that the plan was adopted by the City on April 4, 1961 and that execution of the plan has

been proceeding since that time. The Act which plaintiff seeks to take advantage of came into existence October 15, 1966. The section of said Act relied upon by plaintiff is as follows:

> 16 U.S.C.A. § 470f. Effect of Federal undertakings upon property listed in the National Register; comment by Advisory Council on Historic Preservation
>
> "The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal department or independent agency having authority to license any undertaking shall, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in the National Register. The head of any such Federal agency shall afford the Advisory Council on Historic Preservation established under sections 470i–470m of this title a reasonable opportunity to comment with regard to such undertaking. Pub.L. 89–665, Title I, § 106, Oct. 15, 1966, 80 Stat. 917."

■ Concerning the non-retroactivity grounds for the motion to dismiss, it was conceded by the plaintiff at the hearing that the National Historic Preservation Act is not retroactive. Therefore, we need not discuss that aspect as such. However, it is the position of the plaintiff that certain language in § 470f, though not retroactive, nevertheless requires that the provisions contained therein are called into play at each point where Federal funds are paid out— "prior to the approval of the expenditure of any Federal funds on the undertaking," being such language. Plaintiff contends that the original approval in 1961 of the expenditure of Federal funds on the City's urban renewal plan (Mich. R–34) does not actually constitute a blanket approval for the disbursement of funds in futuro in installments; that any installment or individual payment is "approval" as it is paid and is, therefore, subject to the procedure set forth in the balance of § 470f. We are discussing this contention of plaintiff's before reaching the crucial question of "standing" because common sense alone seems to compel only one conclusion as to it. The words "prior to approval of the expenditure" are as clear as words can be. Congress did not say "prior to the expenditure"—approval of expenditure and the expenditure itself are two separate and distinct concepts. Approval of expenditure requires a judgment. The actual expenditure is a clerical, ministerial or mechanical act. As we understand it, plaintiff's position is that each and every time there is to be an expenditure pursuant to a prior approval the entire approval machinery wheels must again be set in motion and the approval process repeated. This Court would have to be mad to place such a ludicrous interpretation on the simple clear language employed by Congress in § 470f. Even assuming that plaintiff has standing and assuming that the Mich. R–34 plan had been approved only a year or two before the National Register was open for membership, the language of § 470f would not, in our opinion, lend itself to the interpretation placed upon it by plaintiff for the purpose of activating the provision of the last sentence of § 470f.

In its argument in opposition to defendants' motions to dismiss, in addition to other citations, plaintiff places substantial reliance on *Western Addition Community Organization v. Weaver,* 294 F.Supp. 433 (N.D.Cal.1968) as authority for its contention that it has standing to bring this action as an aggrieved person under the provisions of the Administrative Procedure Act, as well as under the Federal Housing Act of 1949, as amended.

*Western Addition* was a class action brought under the Federal Housing Act of 1949, 42 U.S.C. § 1441 et seq., and under the Administrative Procedure Act, 5 U.S.C. § 551 et seq. Western Addition

Community Organization was an unincorporated association composed of individuals and organizations in the Western Addition area of San Francisco. It sued on behalf of residents about to be displaced from their homes by construction of "Western Addition Area II, Urban Renewal Project." The case was before the Court on plaintiff's application for a preliminary injunction and upon the defendants' motion to dismiss. The motion to dismiss was based upon the grounds: "(1) that the action of the Secretary is not subject to judicial review, and (2) that in any event plaintiffs herein do not have standing to obtain judicial review." The Court, in determining these two issues, found in part as follows:

"We conclude, therefore, that the Secretary's action now under consideration is subject to judicial review—at least to the extent of determining whether the Secretary's discretion concerning the satisfactoriness of the relocation plan has been exercised not arbitrarily but reasonably upon some substantial and supporting factual basis." *Western Addition, supra,* p. 443.

█ In the case at bar, while the plaintiff alleged jurisdiction pursuant to 5 U.S.C. §§ 701–702, 704 (in addition to other sections), its complaint in case No. 6174 is devoid of any allegation that the Secretary and/or the Agency was guilty of any discretionary action which had been exercised arbitrarily and without a substantial and supporting factual basis.

The prayer of the plaintiff's Complaint is as follows:

"WHEREFORE, plaintiff Kent County Council for Historic Preservation prays that this Court:

1. Enter a preliminary injunction, pending trial of this action, directing defendant Romney to afford the Advisory Council on Historic Preservation a reasonable opportunity to comment on the contemplated demoli-tion of the Old Grand Rapids City Hall, and to otherwise exert his good offices to prevent the improvident, illegal demolition of this historic building.

2. Direct such further appropriate relief as it deems necessary to insure that defendant Romney, his staff, agents, designees, contractees, employees and successors will take all reasonable means to insure that the Old Grand Rapids City Hall will not be irreparably injured or improvidently destroyed without full compliance with all applicable laws, regulations and orders of this Court."

The plaintiff's Complaint alleges in part as follows:

"10. * * * The plan for Urban Renewal Project Mich. R–34, as originally approved *, called for the demolition of all buildings and the clearing of all land within the project area, *including Old City Hall.*" [Emphasis supplied.]

This excerpt from the plaintiff's Complaint raises the question of how the Secretary and/or the Agency in approving the plan for demolition of the Old City Hall on August 15, 1961 took action that was arbitrary and without a substantial and supporting factual basis by failing to consider the provisions of a statute, namely, the National Historic Preservation Act of 1966, which was enacted in October 1966. The question provides its own answer. When a complaint contains no allegation of arbitrary and capricious conduct involving discretionary agency action; when it contains a prayer that does not seek judicial review of agency action; when the factual picture as developed from the Complaints presents a situation that is inherently impossible to have occurred— arbitrary action in 1961 in failing to give consideration to a statute enacted in 1966, we have conditions which are not covered by the Court's ruling in *Western Addition* granting judicial review under the Administrative Procedure

* August 15, 1961.

Act. Accordingly, plaintiff's contention that it is entitled to judicial review is without merit.

*Western Addition*, at page 443, states as follows:

"In the present case the standing of plaintiffs is not dependent on mere taxpayer status. It arises out of a manifest intent of the Congress to protect the interests of a particular class—individuals and families about to be displaced by the urban renewal project. In the recent case of Hardin v. Kentucky Utilities Co., 390 U.S. 1, 5–7, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968) the Supreme Court, dealing with the Tennessee Valley Authority Act, has made clear that, when a statute clearly reflects a Congressional purpose to protect the interests of a particular class, persons within that class have standing to require compliance with the statute. The Court rejected the holding of Kansas City Power & Light Co. v. McKay, 96 U.S. App.D.C. 273, 225 F.2d 924 (1955), relied on by defendants in the present case.

Recent amendments to the Act and the broadening trend of the Supreme Court are reflected in later federal cases dealing with standing to sue under the Housing Act."

As indicated, the Court in *Western Addition* was concerned with a statute that clearly reflected the intention of Congress to protect the interests of individuals and families about to be displaced by the urban renewal projects. The Court there determined that persons in this particular class had standing to sue to require compliance with the statute.

▮ Unlike the Court in *Western Addition* we are concerned with a statute, 16 U.S.C.A. § 470f whose function is to provide the Advisory Council on Historic Preservation a reasonable opportunity to comment with regard to an undertaking and its effect on any district, site, building, structure or object that is included in the National Register, and

further to provide that the undertaking conform to other requirements of the statute. The National Historic Preservation Act provides in part as follows:

"(a) The Secretary of the Interior is authorized—

(1) to expand and maintain a national register of districts, sites, buildings, structures, and objects significant in American history, architecture, archeology, and culture, hereinafter referred to as the National Register, and to grant funds to States for the purpose of preparing comprehensive statewide historic surveys and plans, in accordance with criteria established by the Secretary, for the preservation, acquisition, and development of such properties;" 16 U.S.C.A. § 470a.

Thus we are concerned with a statute that has application to federal agencies, heads of federal departments or individual agencies and the Advisory Council on Historic Preservation, with the duties of each clearly spelled out. [The Advisory Council on Historic Preservation, composed of seventeen members (not to be confused with Kent County Council for Historic Preservation), is not a party to this suit, either as a plaintiff or a defendant.] We are concerned with inanimate objects such as districts, sites, buildings, structures, or objects that are included in the National Register, rather than with individuals, organizations or corporations. Thus we are considering matters completely different from those the Court had for consideration in *Western Addition*.

Plaintiff has failed to establish by proof, argument or citation that it has any interest that would give it the right to bring this action. Accordingly, it lacks standing to sue.

The motions to dismiss heretofore filed herein should be granted. The moving parties may submit orders in accordance with this Memorandum, for consideration by the Court, incorporating therein such proposed supplemental comments as they may find desirable.