WATCH (Waterbury Action to Conserve Our Heritage Incorporated)

v.

Patricia Roberts HARRIS, individually and as Secretary, United States Department of Housing and Urban Development; Edward T. Martin, Regional Administrator, Region 1, United States Department of Housing and Urban Development; Lawrence Thompson, Area Director, United States Department of Housing and Urban Development; Waterbury Urban Renewal Agency.

Civ. No. H–78–539.

United States District Court,
D. Connecticut.

Nov. 6, 1981.

William Howard, Shaw & Howard, Middletown, Conn., for plaintiff.

George J. Kelly, Jr., Asst. U.S. Atty., Richard Blumenthal, U. S. Atty., Hartford, Conn., for all 3 government officials and H.U.D.

James E. Hartley, Jr., Secor, Cassidy & McPartland, Waterbury, Conn., for Waterbury Urban Renewal Agency.

### RULING ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

CLARIE, Chief Judge.

The plaintiff has applied to this Court for an award of attorneys' fees and expenses which arose out of litigation to preserve certain historic buildings in the City of Waterbury that were about to be demolished as part of a large-scale urban renewal project. The plaintiff relies primarily upon a recently enacted amendment to the National Historic Preservation Act, ("NHPA"), 16 U.S.C. § 470W–4 (1980), which provides for an award of attorneys' fees to any person who substantially prevails in an action to enforce the provisions of the Act. The plaintiff also cites the bad faith and common fund principles as being present here, as exceptions to the general rule against the awarding of attorneys' fees to a prevailing party. The United States opposes such an award on the grounds of sovereign immunity, the inapplicability of the attorneys' fees provision in the NHPA statute to the federal government, and the fact that this action was not "pending" on December 12, 1980, when the attorneys' fees provision took effect. It also argues that the facts of this case do not support a finding of bad faith on the part of the federal government.

The Waterbury Urban Renewal Authority ("WURA"), on the other hand, contends

that NHPA and the attorneys' fees provision is applicable only to the federal government, and disputes the applicability of the bad faith and common fund exceptions to the facts of this case. In a supplemental brief, WURA reiterates the federal government's claim that the case was not "pending" when the attorneys' fees amendment to NHPA became effective and added the further defense that an award of attorneys' fees is barred by the Eleventh Amendment. The Court finds in favor of the plaintiff under the attorneys' fees provision of NHPA.

### Facts

This suit has been pending in this Court since 1978, when a local preservation organization, Waterbury Action to Conserve Our Heritage ("WATCH"), sought to enjoin an urban renewal project in the City of Waterbury alleging violations of the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4321–4347 (1976), the National Historic Preservation Act ("NHPA"), 16 U.S.C. §§ 470–470t (1976), and regulations promulgated by the Department of Housing and Urban Development ("HUD") to comply with NEPA and NHPA. 38 Fed.Reg. 19,182 *et seq.* (1973). Specifically, WATCH sought to enjoin the ongoing demolition of commercial buildings in the urban renewal project area until HUD and WURA determined the eligibility of the buildings for inclusion in the National Register of Historic Places as required by the applicable statutes and regulations. WATCH further requested a temporary restraining order while the Court weighed the arguments for an injunction. Initially, the request for the temporary restraining order was denied; however, the Court was persuaded by a change of circumstances one week later, when it became apparent that WURA's continuing demolition efforts could jeopardize WATCH's attempt to protect the remaining buildings in the project area.

After a full hearing, the Court in an unreported decision granted a preliminary injunction and found that the defendants had in fact violated NEPA. *WATCH v.*

*Harris,* Civil No. 78–539 (D.Conn. Dec. 22, 1978). WURA appealed the decision to the Court of Appeals, and WATCH cross-appealed the Court's finding that NHPA and HUD's own regulations were inapplicable. It is important to note that the federal government took a position contrary to WURA on the appeal, arguing that NEPA was clearly applicable to the Waterbury dispute. The Court of Appeals affirmed the NEPA holding and found in addition that WURA and the federal government were bound by NEPA and the HUD regulations. *WATCH v. Harris,* 603 F.2d 310 (2d Cir. 1979). Accordingly, the Court permanently enjoined the Waterbury project until such time as the defendants complied with the statutes and regulations. WURA then petitioned the Supreme Court for certiorari which was denied on December 10, 1979. 444 U.S. 995, 100 S.Ct. 530, 62 L.Ed.2d 426 (1979).

Subsequent to the decision of the Court of Appeals, the parties engaged in periodic discussions in an attempt to work out a settlement with respect to the project. These negotiations culminated in a Memorandum of Agreement which was signed on December 8, 1980 by WATCH, the City of Waterbury, WURA, HUD, the Connecticut State Historic Preservation Office, and the Advisory Council on Historic Preservation. On February 9, 1981, the plaintiff filed the agreement with the Court, and the Court heard and granted the plaintiff's motion to dissolve the permanent injunction.

### Discussion of the Law

The plaintiff bases its claim for attorneys' fees on a recent amendment to NHPA which became effective on December 12, 1980 and provides in pertinent part:

"Sec. 305. In any civil action brought in any United States district court by any interested person to enforce the provisions of this Act, if such person substantially prevails in such action, the court may award attorneys' fees, expert witness fees, and other costs of participating in such action, as the court deems reasonable." 16 U.S.C. § 470w–4 (1980).

Therefore, a threshold determination in this claim for attorneys' fees is whether this case can be said to have been "pending" as of the effective date of the statute at which time all of the litigation had been completed and the settlement agreement had been signed by all parties.

In *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court addressed this precise issue and held that where Congress had passed legislation authorizing an award of attorneys' fees in school desegregation cases, and where the legislation became effective while the fee request was pending in the Court of Appeals, the attorneys' fee statute was applicable to services rendered during the entire controversy. In reaching this conclusion, the Court noted:

> "We anchor our holding in this case on the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2016.

The *Bradley* Court delineated three possible situations where the retroactive application of a statute might result in "manifest injustice." First, the Court looked to the nature and identity of the parties and noted the potential of injustice in cases between private individuals. In *Bradley*, however, as in the present case, the suit was commenced by a group of citizens against a governmental body. In such a case, the *Bradley* Court recognized the possible "disparity in the respective abilities of the parties adequately to present and protect their interests." *Id.* at 718, 94 S.Ct. at 2019. In addition, the Court emphasized that:

> "school desegregation litigation is of a kind different from 'mere private cases between individuals.' With the Board responsible for the education of the very students who brought suit against it to require that such education comport with constitutional standards, it is not appropriate to view the parties as engaged in a routine private lawsuit. In this litigation the plaintiffs may be recognized as having rendered substantial service both to

the Board itself, by bringing it into compliance with its constitutional mandate, and to the community at large by securing for it the benefits assumed to flow from a nondiscriminatory educational system." *Id.*

The same reasoning is applicable to the facts of the present case where the actions of WATCH can be said to have done a substantial service to the federal government, WURA, and the Waterbury community at large, in protecting historic properties and in insuring that the urban renewal project was undertaken in a lawful manner.

The Court in *Bradley* next looked to the nature of the rights effected by the retroactive application of a law, noting that prior cases had refused to apply intervening changes in law to pending actions where to do so would infringe upon matured or unconditional rights. The Court found no matured right in *Bradley* observing that:

> "It cannot be claimed that the publicly elected School Board had such a right in the funds allocated to it by the taxpayers. These funds were essentially held in trust for the public, and at all times the Board was subject to such conditions or instructions on the use of the funds as the public wished to make through its duly elected representatives." *Id.* at 720, 94 S.Ct. at 2020.

Again, this Court finds the *Bradley* reasoning to be particularly apposite under the present facts where WURA cannot be said to have any unconditional right to public funds.

The final situation considered by the Court in *Bradley* concerned the impact of changes in law upon existing rights or the possibility that new and unanticipated obligations could be imposed upon parties without notice or an opportunity to be heard. This concern, too, was found inapplicable to the *Bradley* facts where the Court noted that the statutory provision for attorneys' fees "did not alter the Board's constitutional responsibility for providing pupils with a nondiscriminatory education." *Id.* at 721, 94 S.Ct. at 2021. In a similar fashion, the

application of the attorneys' fees amendment in the present case cannot be viewed as changing the obligation of both the federal and municipal defendants to comply with federal statutes in undertaking urban renewal projects. Accordingly, the Court finds that no "manifest injustice" will result from the retroactive application of the attorneys' fees statute in this case.

The remaining prerequisites to suit under the statute are not disputed by the defendants. WATCH clearly is an "interested person" who has "substantially" prevailed in this action.

The next question to be considered is whether the NHPA amendment is applicable to the defendants in this case. The Court notes at the outset that, due to the newness of the attorneys' fees statute, there are no cases establishing any precedent in this area. Congress has framed the amendment in very broad terms. It provides for an award of attorneys' fees in "*any* civil action brought . . . by *any* interested person to enforce the provisions of this Act", without any limitation as to which defendants are liable for fees. (Emphasis added). In the ordinary suit under NHPA, the defendants typically include federal, state, and municipal branches of the government. *See, e.g., Hart v. Denver Urban Renewal Authority*, 551 F.2d 1178 (10th Cir. 1977); *South Hill Neighborhood Association v. Romney*, 421 F.2d 454 (6th Cir. 1969), *cert. denied*, 397 U.S. 1025, 90 S.Ct. 1261, 25 L.Ed.2d 534 (1970); *Save the Courthouse Committee v. Lynn*, 408 F.Supp. 1323 (S.D.N.Y.1975).

█ The United States argues that under the doctrine of sovereign immunity, attorneys' fees cannot be awarded against the federal government except where expressly authorized by statute. *See United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 267–68, 95 S.Ct. 1612, 1626, 44 L.Ed.2d 141 (1975); *Natural Resources Defense Council, Inc. v. Environmental Protection Agency*, 484 F.2d 1331, 1335 (1st Cir. 1973). It claims that the general, albeit broad,

language of the amendment falls short of an express authorization of such fees and that the legislative history of the statute is inconclusive. The references to the amendment in House Report No. 96–1457, while sparse, indicate the intent of Congress to hold the federal government accountable for attorneys' fees in litigation under NHPA. The report noted that

> "The intent [of the amendment] is to ensure that property owners, non-profit organizations and interested individuals who may otherwise lack the means for court action be awarded reasonable costs for actions taken under this Act. The intent is not to award costs for frivolous suits against Federal agencies." H.R. Rep.No. 96–1457, 96th Cong., 2d Sess. 46, *reprinted in* [1980] U.S.Code Cong. & Ad. News 6378, 6409.

The last sentence of the legislative history would be meaningless if the Court were to adopt the federal government's reading of the statute and hold it immune from such claims. The Court finds that the statute expressly provides for attorneys' fees for meritorious claims against federal agencies.

█ Furthermore, the presumption that the federal government cannot be held liable for attorneys' fees, except where expressly authorized by statute, has been changed by the recent enactment of the Equal Access to Justice Act. That legislation provides in pertinent part:

> "(b) Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." 28 U.S.C. § 2412(b).

A court may now award attorneys' fees against the United States to the same extent that any other party would be liable under the common law or the terms of any statute. The statute also provides for an effective date of October 1, 1981 and is applicable to "any civil action or adversary adjudication described in section 2412 of title 28, United States Code, which is *pending on*, or commenced on or after such date." (Emphasis added). The Court finds that the present case is "pending" for the purposes of the Equal Access to Justice Act. Therefore, the attorneys' fees amendment, read in conjunction with the Equal Access to Justice Act, should apply to the federal government's liability for attorneys' fees in this case.

■ The Waterbury Urban Renewal Authority has raised several defenses of its own. In the first place, it contends that the attorneys' fees amendment, and indeed all of NHPA, is applicable only to the federal government. This argument is untenable in view of the typical NHPA lawsuit which frequently involves federal and municipal defendants. *Hart v. Denver Urban Renewal Authority*, 551 F.2d 1178 (10th Cir. 1977); *South Hill Neighborhood Association v. Romney*, 421 F.2d 454 (6th Cir. 1969), *cert. denied*, 397 U.S. 1025, 90 S.Ct. 1261, 25 L.Ed.2d 534 (1970); *Save the Courthouse Committee v. Lynn*, 408 F.Supp. 1323 (S.D. N.Y.1975); *St. Joseph Historical Society v. Land Clearance for Redevelopment Authority*, 366 F.Supp. 605 (W.D.Mo.1973); *Kent County Council for Historic Preservation v. Romney*, 304 F.Supp. 885 (W.D.Mich.1969). Those cases which have considered the issue have held that a local agency which receives urban renewal funds from the federal government is subject to the provisions of NHPA, even though the most frequently litigated provision of the act is generally applicable to the federal agencies alone.[1] In *Save the Courthouse Committee v. Lynn*, 408 F.Supp. 1323 (S.D.N.Y.1975), the court noted that:

"Here the planning and implementation of the urban renewal plan has taken place with the major assistance of the federal government. The local agency has received substantial amounts of federal funds and additional funds are yet to be disbursed. In addition, HUD has continuing monitoring responsibilities to insure that the plan is properly carried out. Given the lengthy, extensive and close-working relationship between HUD and the local agency in the execution of the plan, it can be said that they have become 'partners' in the implementation of the project." *Id.* at 1344.

Here the federal government has contributed over one-half of the total funds allocated for the Waterbury project. Accordingly, the Court finds that WURA was a "partner" of the federal government and subject to the provisions of NHPA.

■ WURA also argues that in view of the fact that the State of Connecticut has contributed $2,122,797.00 to the Waterbury project, the Eleventh Amendment bars an award of attorneys' fees in this case. The Eleventh Amendment provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S.Const. amend. XI.

It is inapplicable to the present case for two reasons. First, it is well established that

---

1. The relevant provision provides in pertinent part:

"The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal department or independent agency having authority to license any undertaking shall, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register. The head of any such Federal agency shall afford the Advisory Council on Historic Preservation established under sections 470i to 470t of this title a reasonable opportunity to comment with regard to such undertaking." 16 U.S.C. § 470f (1980).

the mere receipt of funds by a governmental body from the state is not conclusive on the issue of Eleventh Amendment immunity. In *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Supreme Court held that a school board was not to be treated as an arm of the State for Eleventh Amendment purposes despite the fact that the board received "a significant amount of money from the State" and was subject to a degree of guidance from the State Board of Education. *Id.* at 280, 97 S.Ct. at 572. In reaching its holding, the Court noted that the board had extensive powers to issue bonds and levy taxes and was therefore "more like a county or city than it is like an arm of the State." *Id.* Similarly, in *Holley v. Lavine*, 605 F.2d 638 (2d Cir. 1979), *cert. denied sub nom. Blum v. Holley*, 446 U.S. 913, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980), the court affirmed a District Court judgment which awarded the plaintiff retroactive welfare benefits against a county social services commissioner, noting that the county had its own taxing authority as well as independent political status, appointed its local county commissioner, and bore ultimate responsibility for public assistance payments. *Id.* at 644. *See also Calkins v. Blum*, 511 F.Supp. 1073 (N.D.N.Y.1981); *Markel v. Blum*, 509 F.Supp. 942 (N.D.N.Y. 1981). In the present case, it is important to note that WURA was created by a resolution of the Board of Aldermen of the City of Waterbury, who were empowered to create the agency under Section 2961 of the City Charter. All of the fifteen members of the agency had been appointed by the Mayor and approved by the Board of Aldermen. The City's financial contribution to the agency matches that of the State. In the financial assistance agreement executed by the City and the State of Connecticut, WURA is entrusted with the supervision and inspection of all work performed on the project and is empowered to negotiate contracts. In light of these factors, the Court finds that WURA is not "an arm of the State" immune from suit under the Eleventh Amendment.

In any event, even if WURA were considered to be "an arm of the State" under the present facts, the Eleventh Amendment would not bar an award of attorneys' fees. In *Class v. Norton*, 505 F.2d 123 (2d Cir. 1974), the court affirmed an award of attorneys' fees by the District Court incurred by the plaintiffs in a suit against the State Commissioner of Welfare in his official capacity, despite the fact that such an award would ultimately be derived from the state treasury. In reaching its holding, the court noted a distinction in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), between suits for retroactive benefits from a state, which the *Edelman* Court found to be barred by the Eleventh Amendment, and those involving only incidental effects on the state treasury resulting from compliance with prospective orders of a federal court which were held to be constitutionally permissible. *Id.* at 667–68, 94 S.Ct. at 1357–58. The *Norton* court held that the Eleventh Amendment is no bar to a suit for attorneys' fees where, as in the present case, the fees are sought by a plaintiff who has secured prospective relief against state officials. *See also Gagne v. Maher*, 594 F.2d 336, 341–42 (2d Cir. 1979); *Jordan v. Fusari*, 496 F.2d 646, 651 (2d Cir. 1974).

Having found that both defendants are liable for attorneys' fees in this case, the Court next turns to the specific amount requested. Plaintiff's counsel claims fees of $28,700.54, a figure which represents the total services rendered by his firm, including attorneys' time at the rate of $45.00 to $50.00 per hour, together with paralegal time, and expenses for photocopying, travel, disbursements, and telephone calls.

In considering this request, the Court is guided by several factors including the time and labor spent, counsel's experience and reputation, and the magnitude and complexity of the litigation. *Fitzpatrick v. Bitzer*, 455 F.Supp. 1338, 1342 (D.Conn.1978); *Firebird Society v. Members of Board of Fire Commissioners*, 433 F.Supp. 752 (D.Conn.1976), *aff'd* 556 F.2d 642 (2d Cir. 1977). In light of the foregoing

**16**

principles, the Court finds that counsel's requested fee is excessive. While the attorney for WATCH is experienced in historic preservation litigation and entitled to the hourly rate requested of $45.00 to $50.00 an hour, the Court finds that in light of his experience in similar cases involving similar issues, the amount of time expended by counsel in preparing for the litigation of this case is excessive. Although it is difficult to break down counsel's time sheets into neat categories, it appears that over 270 hours were expended on researching and drafting of documents alone. Of this amount, counsel devoted 125 hours to his cross-appeal to the Court of Appeals which raised arguments similar to those raised in the District Court. In addition, plaintiff's attorney spent many hours on the road between Hartford, Waterbury and his Middletown office which the Court does not view as time compensable at a $45.00 to $50.00 per hour rate. Finally, counsel's charges for expert witnesses and other disbursements are too high. Accordingly, the Court finds it reasonable to reduce counsel's recovery by one-third, while allowing him full recovery for the cost of printing his brief on appeal, and award him attorneys' fees and expenses in the amount of $19,419.70.

The Court further finds that the award of such attorneys' fees should be divided equally between the federal government and WURA. The latter agency alone was responsible for filing the appeals in the Circuit Court of Appeals and the Supreme Court. Clearly, the federal government is not responsible for the time spent by plaintiff's counsel in opposing these appeals. However, the federal government was initially lax in performing its duties of overseeing the Waterbury project in that it failed to conduct a Special Environmental Clearance at the outset of the project before approving the Loan and Capital Grant Contract. Furthermore, it was HUD's termination of a freeze order which had been issued to determine the necessity of a second Special Environmental Clearance, notwithstanding the fact that there were still pending several nominations of commercial buildings for the National Register

of Historic Places in the project area, which necessitated WATCH's suit for an injunction in the first place.

Accordingly, the Court finds the federal government and WURA to be liable for $19,419.70 in attorneys' fees and expenses, to be shared equally.

SO ORDERED.