**NATIONAL TRUST FOR HISTORIC PRESERVATION, et al., Plaintiffs,**

v.

**CORPS OF ENGINEERS, et al., Defendants.**

No. C–82–624.

United States District Court, S.D. Ohio, W.D.

Aug. 23, 1983.

466

Timothy M. Burke, Cincinnati, Ohio, for Riverside Civic and Welfare Club, Inc., and Prospect Point Homeowners Ass'n.

Gary W. Wilburn, Washington, D.C., for the Nat. Trust for Historic Preservation in the U.S.

W. Joseph Dehner, Jr., Cincinnati, Ohio, for Miami Purchase Ass'n for Historic Preservation.

Ely M.T. Ryder, Asst. City Sol., Cincinnati, Ohio, amicus curiae for City of Cincinnati.

Elizabeth Gere Whitaker, Asst. U.S. Atty., Cincinnati, Ohio, Rebecca A. Donnellan, U.S. Dept. of Justice, Washington, D.C., for U.S. Army Corps of Engineers, John O. Marsh, Jr., Secretary of the Army, Joseph K. Bratton, Chief of Engineers, U.S. Army Corps of Engineers, C.E. Eastburn, Dist. Engineer, Louisville Dist., U.S. Army Corps of Engineers.

P. Michael McCaulay, Cincinnati, Ohio, for Raymond J. Wandstrat.

## ORDER AWARDING ATTORNEYS' FEE

SPIEGEL, District Judge:

This matter came on for hearing on plaintiffs' application for attorneys' fees (doc. 38), defendants' memorandum in opposition (doc. 43), and plaintiffs' reply (doc. 46); and plaintiffs' motion to supplement its application (doc. 52), defendants' memorandum in opposition (doc. 54) and plaintiffs' reply (doc. 55). We need not consider defendant Wandstrat's memorandum in opposition to plaintiffs' application (doc. 39) as the parties stipulated that any award of attorney fees would be entered solely against federal defendants (doc. 49).

Plaintiffs brought this action for declaratory and injunctive relief alleging that defendant United States Army Corps of Engineers and Corps officials violated federal historic preservation statutes and regulations when they issued a permit to defendant Raymond Wandstrat to construct and maintain a barge loading facility on the Ohio River at Anderson Ferry, Ohio. On plaintiffs' motion for summary judgment,

this Court, 552 F.Supp. 784, found that defendants had violated § 106 of the National Historic Preservation Act, 16 U.S.C. § 470f and Advisory Council on Historic Preservation regulations, 36 C.F.R., Part 800. The Court enjoined defendants from proceeding with construction under the permit issued and ordered them to comply with applicable statutory and regulatory provisions in any future undertakings related to activities that were the subject of this litigation (doc. 35).

Plaintiffs in this action are the National Trust for Historic Preservation in the United States, a charitable, educational, non-profit corporation chartered by Congress to foster the historic preservation policy of the United States and partially funded by the federal government; the Miami Purchase Association for Historic Preservation, an Ohio non-profit corporation formed to foster the preservation of culturally and/or historically significant sites, buildings and objects in Ohio; and two non-profit homeowner associations composed by persons residing near the site of the proposed barge facility. The application is supported by affidavits from Timothy M. Burke, Esq., of the law firm of Manley, Jordan & Fischer, trial counsel for the two home owners associations; W. Joseph Dehner, Jr., Esq., from the law firm of Frost and Jacobs, trial attorney for Miami Purchase; and Gary W. Wilburn, Esq., assistant general counsel for the National Trust for Historic Preservation and trial attorney for the Trust. All three attorneys testified at the hearing in support of the application. In addition, John Murphy, Esq., Professor of Law at the College of Law, University of Cincinnati, testified for plaintiffs as an expert witness on the reasonableness of the hourly rates, the appropriateness of the total fees sought, and the reputation and experience of plaintiffs' counsel.

The National Historic Preservation Act (NHPA) provides for an award of attorneys' fees and costs to any person who "substantially prevails" in any action brought to enforce the provisions of the NHPA, 16 U.S.C. § 470w–4. Defendants

argue first that no award should issue because such awards are discretionary with the trial court and the defendants' position was reasonable. We find no merit in this argument in light of the broad language of the attorney fee provision and its legislative history.

Section 470w–4 provides:

In *any* civil action brought in any United States District Court by *any* interested person to enforce the provisions of [the NHPA], if such person substantially prevails in such action, the court may award attorneys' fees, expert witness fees, and other cost of participating in such action as the court deems reasonable. (emphasis added)

In enacting § 470w–4, Congress intended "to insure that property owners, non-profit organizations and interested individuals who may otherwise lack the means for court action be awarded reasonable cost for actions taken under the [NHPA]". H.R. Rep. No. 1457, 96th Cong., 2d Sess., U.S. Code Cong. & Admin.News 1980, p. 6378, 6409.

█ Clearly awards of attorneys fees are discretionary under the NHPA. The test, however, is not the reasonableness of the losing party's position but rather whether the party seeking such an award substantially prevailed. We conclude that once the Court finds that the plaintiff has substantially prevailed, it is required to award reasonable attorneys' fees. *Cf. Hensley v. Eckerhart,* —— U.S. ——, ——, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) in which the Supreme Court stated that because the purpose of the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988, is to ensure effective access to justice to persons with civil rights grievances, prevailing plaintiffs should "ordinarily" recover attorney's fees.

█ Our task is to determine whether plaintiffs substantially prevailed. Obviously they did. They sought—successfully—a declaration that defendants violated the provisions of the NHPA. They also sought—successfully—to enjoin defendants from proceeding with construction of the proposed barge loading facility or from proceeding with future undertakings without complying with pertinent statutes and regulations. Accordingly, we conclude that an award of reasonable attorneys' fees should issue.

There is essentially no case law interpreting the attorney fee provision of the NHPA. The one reported decision, *WATCH v. Harris,* 535 F.Supp. 9 (D.Conn. 1981) held that § 470w–4 permits an attorney fee award against federal and state agencies. The Court stated that in determining the amount to be awarded, it must consider the time and labor spent, the experience and reputation of counsel, and the magnitude and complexity of the litigation. *Id* at 15. The award requested was reduced by one-third on the ground that the hours spent and the charges for expert witnesses and other disbursements were excessive. *Id.* at 16.

█ We find that the purpose of the attorney fee provision of the NHPA (§ 470w–4) is similar to that of the Civil Rights Attorney's Fee Act (§ 1988)—to encourage lawyers to accept cases in which damages may be small or non-existent. *Kinney v. Rothchild,* 678 F.2d 658, 660 (6th Cir.1982) (1988). Thus the determination of what is a reasonable fee under the NHPA should be governed by the same standard used in making fee awards under § 1988.

█ The Supreme Court recently stated: Where a plaintiff has obtained an excellent result, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation and indeed in some cases of exceptional success an enhanced award may be justified. *Hensley v. Eckerhart,* —— U.S. at ——, 103 S.Ct. at 1940.

Prior to the *Hensley* decision, our own Court of Appeals developed guidelines for determining what is a fully compensatory award under § 1988. *Louisville Black Police Officers Organization v. City of Louisville,* 700 F.2d 268 (6th Cir.1983); *Northcross v. Bd. of Education of the Memphis*

*City Schools,* 611 F.2d 624 (6th Cir.1979). These guidelines are consistent with the Supreme Court's discussion of § 1988 awards in *Hensley.* The fundamental principle in calculating fee awards is making an award that is adequate to attract competent counsel but does not constitute a windfall to attorneys. *Louisville Black Police Officers Organization,* 700 F.2d at 278, quoting *Northcross,* 611 F.2d at 633.

■ *Northcross* requires that fees be calculated in terms of hours spent and reasonable rates of compensation. 611 F.2d at 636–38. The Court may, however, deduct a percentage of the hours claimed so long as it indicates the reasons for the deduction. *Louisville Black Police Officers Association,* 700 F.2d at 278–79. *Northcross* also allows a court to make an upward adjustment of the award by a contingency factor when the routine hourly rate would not otherwise be reasonable. The Court must examine the circumstances of each case to determine whether a contingency factor is appropriate. *Louisville Black Police,* 700 F.2d at 279–81.

■ In the instant case, plaintiffs were represented both by private attorneys as well as Gary Wilburn, an institutional attorney from the National Trust for Historic Preservation. In determining the rate of compensation for institutional attorneys, district courts may look to the rates customarily charged in the community for similar services. *Louisville Black Police,* 700 F.2d at 276. The community may be the local market, the national market, a specialized market, or any other market the court finds appropriate. *Id.* at 277–78. The goal is always to determine what is a reasonable rate for the particular attorney given the services provided and that attorney's qualifications.

Plaintiffs request a total award of $86,-200.00 in attorney's fees and $3,163.61 in total costs and expenses. Their application covers work through May 25, 1983. The affidavits of Timothy M. Burke, Esq. (doc. 38, 52) detail the services provided by attorneys and professionals at Manley, Jordan & Fischer as well as their customary hourly

rates. Similar affidavits were filed by Gary Wilburn, Esq. (doc. 30, 52) trial counsel for the National Trust, and Joseph Dehner, Esq. (doc. 32, 52), trial counsel for Miami Purchase.

## I. ATTORNEYS' FEES

The total award sought is based upon hourly rates of $125.00, $100.00, $90.00, and $75.00 for various attorneys, $40.00 for C. Gregory Dale, a city planner on the full-time professional staff of Manley, Jordan & Fischer, and $25.00 for Kevin Doyle, a law clerk for Manley, Jordan & Fischer during the summer of 1982. Plaintiffs also seek an upward adjustment of approximately 100%.

Defendants argue that the amount sought by plaintiffs is unreasonable. In particular defendants assert that the hours claimed are excessive and the result of duplicative effort, that the hourly rates are unsupported by adequate documentation, and that there is no justification for a multiplier. In addition, defendants challenge the costs sought.

■ Before considering the factual questions of whether the hours and hourly rates claimed are reasonable, we must consider several legal questions posed by defendants. First, defendants assert that § 470w–4 does not permit recovery for time spent by law clerks, paralegals, and professionals. The statute, however, is broad, permitting recovery of "expert witness fees, and other costs of participating in such action," as the Court deems reasonable. Moreover, in calculating § 1988 awards, the Court has the discretion to include the cost of paralegal expenses as well as any other out-of-pocket expenses which would normally be charged to a fee paying client. *Northcross,* 611 F.2d at 639.

We find it reasonable to use a city planner like Mr. Dale, with his specialized skills and knowledge as a fact investigator in a case like this. If expert witness fees are recoverable under § 470w–4, then surely the time of an expert investigator should be recoverable under that same statute. Furthermore, it is eminently reasonable that a

law firm use paralegals and law clerks to perform work that otherwise would have to be done by an attorney and charged for at significantly higher rates. *Louisville Black Police,* 700 F.2d at 273, affirming award for services of law clerk not yet admitted to practice. Accordingly, we include that time reasonably spent by these professionals in calculating the award.

■ Second, defendants also maintain that plaintiffs cannot recover for time spent in preventing defendant Wandstrat from constructing the barge loading facility. A review of defendants' itemization of the time which they so characterize (doc. 43, attachment C) reveals that most of these hours were spent in connection with the Advisory Council meeting in October 1982. That meeting was requested by the Corps of Engineers because of this litigation. The actions of the Council might well have affected this litigation in some way. In our view, plaintiffs' decision to prepare for and participate in that meeting was reasonable in light of the possible consequences. We do not accept the position that the Advisory Council meeting was unrelated to the litigation. Accordingly, time reasonably spent in preparing for and participating in that meeting should be compensated.

Third, defendants insist that all time spent on unproductive matters should be deducted. They have presented the Court with an itemization of the time claimed which they consider unproductive (doc. 38, Attachment A). Although defendants distinguish between unproductive time and time expended on unsuccessful claims, that distinction is not clear to us. As to time spent on unsuccessful claims, the Supreme Court recently held:

> We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988. Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claims should be excluded in considering the amount of a reasonable fee. Where a law suit con-

sists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained. *Hensley,* —— U.S. at ——, 103 S.Ct. at 1943.

We have already stated that in the instant case, plaintiffs substantially prevailed on all their claims. We can find no unrelated claims. Nor do we think that time spent preparing a motion for a preliminary injunction which was never filed was unproductive or expended on an unsuccessful claim.

*Hours Claimed*

Our first task is to determine the reasonableness of the total hours claimed. These hours are detailed in the affidavits submitted in support of the application. In response to questions by the Court, Mr. Burke, Mr. Wilburn, and Mr. Dehner all testified that the affidavits contained no claims for duplicative time, and that each of them had exercised billing judgment in setting out the time spent on this litigation. Mr. Wilburn testified that some time before the complaint was filed he and Mr. Burke worked out a division of the work load specifically to avoid duplication of effort.

Our review of the affidavits persuades us that plaintiffs submitted adequate documentation of the hours worked. We also conclude that they attempted to exclude hours that were excessive or redundant. Nevertheless, defendant has pointed out a number of discrepancies (doc. 43, Attachment E) between the affidavits. We agree that there are some discrepancies.

Defendants also argue that many of the hours claimed are duplicative, primarily on the theory that plaintiffs failed to demonstrate the necessity of multiple counsel. We find to the contrary that each set of counsel provided different strengths. The fact that all four plaintiffs filed common pleadings and sought the same relief is in

no way proof that one lawyer from one firm could have accomplished the same task in less time. Nevertheless, we do find some duplication of effort as a consequence of having multiple counsel. For example, all three sets of counsel reviewed the complaint, motions, and supporting and opposing memoranda. Although it is quite proper for all counsel to review such matters where they are jointly responsible for the litigation, it is not necessarily appropriate to claim the total amount of time spent reviewing such matters.

On the basis of the fairly minor discrepancies noted and our finding that there was some duplication of effort, we conclude that it is reasonable to reduce the hours claimed by a factor of fifteen percent (15%).

*Hourly Rates*

As noted earlier, plaintiffs were represented both by private counsel and by an institutional attorney, Gary Wilburn of the National Trust. We will first consider the private attorneys.

*Northcross* provides that the Court look to the fair-market value of the services provided to determine hourly rates and that distinguishing between paralegal services, in-office attorney time, and trial time is an appropriate way of arriving at a fair and equitable fee. 611 F.2d at 638.

The affidavits of Mr. Burke and Mr. Dehner set forth the customary rates charged by their firms for the services of the attorneys and professionals involved in this case. Attached to Mr. Burke's affidavit are curricula vitae for each Manley, Jordan & Fischer attorney and professional who participated in this litigation. In addition, Mr. Dehner testified in detail as to his qualifications. Professor John Murphy testified as an expert witness on the customary hourly rates charged in the Cincinnati community.

We cannot see any justification for distinguishing between the civil rights attorney and the historic preservation attor-

ney for purposes of the awarding attorney fees. As stated earlier, both attorney fee statutes are for the purpose of encouraging attorneys to take cases they might not otherwise be able to take.

The Sixth Court recently affirmed hourly rates of from $40 to $106 for attorneys and $20 for law clerks in *Louisville Black Police Officers,* 700 F.2d at 272. These rates were based upon services rendered from 1974 to 1979. The trial court in that case compensated court time at a higher rate than office time. In addition, the hourly rates were based upon the particular attorney's years of experience, and the year in which the services were rendered. See also *Stewart v. Rhodes,* 656 F.2d 1216 (1981), *cert. denied* 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 851 (1982) (affirming awards based upon an hourly rate of $90 in a prisoner rights case.)

Mr. Burke and Mr. Dehner are experienced and respected attorneys with considerable expertise in the areas of community and land use planning and historic preservation law. Other Manley, Jordan & Fischer attorneys involved in this litigation are well qualified. In light of all the circumstances and considering the respective expertise of the various attorneys and that much of the time spent was in-office time as opposed to court time, the court concludes that the following hourly rates reasonably reflect the fair market value of services rendered: $90 for Mr. Burke, Mr. Fischer, Mr. Manley, Mr. Jordan, and Mr. Dehner and $65 for Mr. Lipton.* We find that an hourly rate of $20 is fair market value for the services of a summer law clerk.

With respect to Mr. Dale, the city planner employed by Manley, Jordan & Fischer, we find that a reasonable fee is the customary hourly rate charged by that firm for his services, that is, $40. The customary hourly rates of the attorneys were decreased largely because the bulk of their time was in-of-

---

* Plaintiffs also claim time for "JD Hayes," "Goehler" and "McMann." However, as those persons are not otherwise identified and we have no record of either their qualifications or

their role in this litigation, we decline to award fees for their services. *Hensley,* —— U.S. at —— and n. 12, 103 S.Ct. at 1941 and n. 12.

fice rather than court time. Such a distinction is inappropriate in the case of Mr. Dale.

With respect to Mr. Wilburn, counsel for defendants argued in Court that he should not be compensated, at the same rate as a private attorney because the National Trust is in part funded by federal monies. We see little merit in this argument. The statute allows for attorney fees in "*any* civil action" to enforce the NHPA without any limitation on the type of plaintiff to whom such fees may be awarded or indeed on the type of defendant who may be liable for fees. If a federal defendant can be liable for attorney fees in an NHPA action, *WATCH,* 535 F.Supp. at 13–15, we see no reason why an agency partially funded by federal monies should not be able to recover attorney fees when it is a substantially prevailing plaintiff. *See Doe v. Burwell,* 537 F.Supp. 186 (S.D.Ohio, 1982), awarding attorney fees to plaintiffs represented by the Youth Law Center of San Francisco, also a recipient of some federal monies.

Secondly, defendants argue that the Court should not compute fees for Mr. Wilburn at an hourly rate higher than that reached by converting his annual salary to an hourly rate. However, the law is clear that institutional attorneys are to be treated no differently than private attorneys. *Louisville Black Police Officers Association,* 700 F.2d at 277.

Mr. Wilburn's expertise in historic preservation matters is thoroughly documented in the curriculum vitae attached to his affidavit. Furthermore, he has specialized in federal administrative law cases. We conclude that a reasonable compensation for his services is that accorded similarly experienced attorneys in the Cincinnati area. Again, as with the Cincinnati attorneys, because the bulk of the time spent was office rather than court time, we conclude that an hourly rate of $90 reflects a fair market value for Mr. Wilburn's services.

*Contingency Factor*

Plaintiffs request an upward adjustment of almost 100% on the ground that the case was fiercely contested and involved a developing area of the law and a serious risk that

plaintiffs would not prevail. Plaintiffs also assert that the result obtained was excellent.

That a case is fiercely contested is not, in our view, adequate justification for an upward adjustment. Ideally, all cases are fiercely contested. Nevertheless, we do find that an upward adjustment of twenty-five percent (25%) is appropriate.

The result obtained was excellent. Plaintiffs achieved exactly what they set out to achieve—a declaration that the defendants proceeded unlawfully and an injunction requiring defendants to comply with applicable statutes and regulations in the future. That plaintiffs may have only postponed rather than prevented the building of the barge loading facility is immaterial. The NHPA and regulations enacted pursuant to it are the law. Without this litigation, the law would have been ignored.

It is true that this matter was decided on cross motions for summary judgment as defendants point out. However, that fact does not mean that the law was settled as defendants would have us believe. Nor does the fact that the Court's resolution of the issue was based largely on a construction of various documents lessen the novelty of the issue.

A contingency factor is awarded not as a bonus but rather to make the attorneys' fee award reasonable. *Louisville Black Police Officers Association,* 700 F.2d at 279. In the instant case, there was a substantial risk that plaintiffs would not prevail. The burden was on them to prove noncompliance with the requirement that the Advisory Council be given a reasonable opportunity to comment. There was little or no law on what constitutes a reasonable opportunity, and it was clear that defendants had at least notified the Advisory Council of the proposed undertaking.

In light of the substantial risk that they would not prevail and the fact that plaintiffs achieved all that they set out to achieve, we find that this is one of those cases of exceptional success in which an enhanced award is justified. *Hensley,* ——

U.S. at ——, 103 S.Ct. at 1940–41. Accordingly, we will make an upwards adjustment of 25% in calculating the reasonable fees to be awarded.

The Court orders that defendants pay attorneys' fees as set forth below. We have calculated the hours claimed on the basis of the affidavits set forth in the original application and the supplemental application for attorneys' fees and plaintiffs' reply memorandum in support of the supplemental application (docs. 38, 52, 55).

| Attorney | Hours Claimed | Reasonable Hourly Rate | Fee | −15% for Duplication | +25% for Contingency | Fee Awarded Attorney |
|---|---|---|---|---|---|---|
| **I. Manley, Jordan & Fischer** | | | | | | |
| Timothy M. Burke | 126.8 | 90.00 | 11,412.00 | 9,700.20 | 12,125.25 | 12,125.25 |
| Robert E. Manley | 9.7 | 90.00 | 873.00 | 742.05 | 927.56 | 927.56 |
| Timothy A. Fischer | 9.4 | 90.00 | 846.00 | 719.10 | 898.88 | 898.88 |
| Andrew S. Lipton | 15.00 | 65.00 | 975.00 | 828.75 | 1,035.94 | 1,035.94 |
| Joseph A. Jordan | 2.2 | 90.00 | 198.00 | 168.30 | 210.38 | 210.38 |
| Kevin Doyle (law clerk) | 16.4 | 20.00 | 328.00 | 278.80 | 348.50 | 348.50 |
| C. Gregory Dole (city planner) | 19.3 | 40.00 | 772.00 | 656.20 | 820.25 | 820.25 |
| | | | | | | 16,366.76 |
| **II. W. Joseph Dehner** | | | | | | |
| | 18.00 | 90.00 | 1,620.00 | 1,370.00 | 1,712.00 | 1,712.00 |
| **III. National Trust––Gary Wilburn** | | | | | | |
| | 266.5 | 90.00 | 23,985.00 | 20,387.25 | 25,484.06 | 25,484.06 |
| TOTAL (All Plaintiffs' Counsel) | | | | | | 43,562.82 |

## II. COSTS

Plaintiffs also seek $3,163.61 in costs and expenses (doc. 52) including $1,375.00 as an expert witness fee for professor John Murphy who testified for plaintiffs at the evidentiary hearing. Plaintiffs filed affidavits with accompanying details of the out-of-pocket expenses incurred by plaintiffs. (doc. 32: ex. 8 to Burke affidavit, ex. 3 to Wilburn affidavit; doc. 52; ex. 2 to Burke affidavit, ex. 3 to Burke affidavit (professional services of expert witness Murphy)). With the exception of fees paid, to the expert witness, the costs listed are primarily for long-distance, phone calls, postage, photo-copying, and travel.

Defendants challenge on the ground that the attorneys' fee provision of the NHPA refers to "costs of participating in [an NHPA] action," not to expenses. 16 U.S.C. § 470w–4. They assert that "costs" is a term of art and limited to items enumerated in 28 U.S.C. § 1920. Although recognizing that such expenses are recoverable under § 1988, defendants mention that the legislative history of § 1988, unlike that of § 470w–4, makes it clear that Congress intended that normal expenses incurred in a

civil rights action be recoverable. Finally, defendants challenge costs incurred in connection with the October 1982 Advisory Council meeting on the ground that that meeting was unrelated to the instant litigation.

We disagree. Section 470w-4 permits an award of "expert witness fees, and other costs of participation in such action, as the court deems reasonable." As in determining attorney fees, reasonableness is the key. Given the similarity of purpose shared by § 470w-4 and § 1988, we see no reason to differentiate between the statutes. Thus, our inquiry is governed by *Hensley* and *Northcross.*

 Under *Hensley,* hours that are not properly billed to a fee-paying client may not be reimbursed pursuant to § 1988. ——— U.S. at ———, 103 S.Ct. at 1940–41. We conclude that the same test applies to costs, that is, whether the costs for which reimbursement is sought are items, which would properly be billed to a fee-paying client. *Northcross* permits reimbursement under § 1988 of "incidental and necessary expenses incurred in furnishing effective and competent representation," disbursements "normally charged to a fee paying client." Such costs include but are not limited to photocopying travel, telephone, and paralegal expenses. 611 F.2d at 639.

After examining plaintiffs' itemization of costs, we conclude that they are such as would be charged to a private client. Furthermore, given the complexity of the litigation, we conclude they are both reasonable and necessary. *Northcross,* 611 F.2d at 642; *WATCH,* 535 F.Supp. at 15 (photocopying, travel disbursements, phone calls); *Doe v. Burwell,* 537 F.Supp. 186 (S.D.Ohio, 1982) (witness fees, copies, depositions, travel, postage, telephone).

Having concluded that plaintiffs' participation in the October 1982 Advisory Council meeting was related to this litigation, we find that costs associated with that participation are recoverable.

Finally, expert witness fees are expressly authorized by section 470w–4, "as the court

deems reasonable." As defendants did not challenge the fee requested for expert witness Murphy, it shall be allowed.

Accordingly, we Order payment of costs as follows:

| | |
|---|---:|
| National Trust | $ 662.38 |
| Manley, Jordan & Fischer | 1,126.23 |
| Frost & Jacobs | —0— |
| Expert witness fee | 1,375.00 |
| TOTAL COSTS AND EXPENSES | $3,163.61 |

*Conclusion*

It is hereby Ordered that defendants pay costs and attorneys' fees for services rendered for plaintiffs by counsel for:

| | |
|---|---:|
| National Trust | $26,146.44 |
| Manley, Jordan & Fischer | 17,492.99 |
| Frost and Jacobs | 1,712.00 |
| Expert Witness Fee | 1,375.00 |
| TOTAL | $46,726.43 |

SO ORDERED.